EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LTD., Appellant, v. JOSEPH ARESTY, Respondent, et al., Defendant.

First Department, October 18, 1960.

*William F. McNulty* of counsel (*Hampton & Dietel,* attorneys), for appellant.

*Thomas P. O'Malley* for respondent.

STEVENS, J. This is an appeal from an order denying the plaintiff's motion for summary judgment. June 19, 1957 the plaintiff issued and delivered to defendant Joseph Aresty in New York an automobile liability insurance policy covering a 1951 Plymouth suburban car.

Subsequent to the issuance of the policy the assured moved to Connecticut. Thereafter and on or about September 10, 1957, a change of address was indorsed on the policy and a portion of the premium paid refunded. The indorsement was issued in New York.

On March 22, 1958, while the policy was in full force and effect the assured's car was involved in an accident in Connecticut with another car. The wife of the assured brought suit in Connecticut against him for damages for personal injuries.

At the time of the issuance and delivery of the policy in New York, subdivision 3 of section 167 of the Insurance Law provided: "No policy or contract shall be deemed to insure against any liability of an insured because of death of or injuries to his or her spouse or because of injury to, or destruction of property of his or her spouse unless express provision relating specifically thereto is included in the policy."

There was no such provision in the policy. Plaintiff seeks declaratory judgment that the policy does not cover liability for injury to the spouse of the insured, that it is not obligated to defend the Connecticut action, and that it is not obligated to pay any judgment that the assured may become obligated to pay as damages resulting from the alleged injuries to his spouse.

The defendant contends that the issuing of the indorsement changing his residence and the refunding of a portion of the premium in effect rewrote the contract of insurance so as to cover

the liability of the assured to his spouse. He asserts that subdivision 3 of section 167 of the Insurance Law no longer applies.

By reason of the provision of the Insurance Law above referred to, the policy, when issued, was subject to the terms of subdivision 3 of section 167 of the Insurance Law. The question to be resolved is whether the indorsement of change in residence to a Connecticut address and the refund in part of the premium constituted the making of a new contract so as to subject it in operation, construction and application to Connecticut law. Or briefly, is the plaintiff obligated to defend and may it be held subject to liability for alleged injuries to defendant's spouse allegedly sustained through his negligence?

The execution, interpretation and validity of a contract is determined by the law of the place where the contract is made. The obligations of the parties thereunder are similarly determined. (*Swift & Co.* v. *Bankers Trust Co.,* 280 N. Y. 135.) The exception to this general rule is where the parties at the time of the making of the contract entertained a different view or intention. If they had a view that the contract would be executed elsewhere then the contract is to be considered according to the law of such place. (See *Hibernia Nat. Bank* v. *Lacombe,* 84 N. Y. 367.) In *Auten* v. *Auten* (308 N. Y. 155) where, though the contract was executed in New York, Mr. Justice FULD pointed out that the parties could not " have expected or believed that any law other than England's would govern the effect of the wife's institution of a separation action " (p. 163). It is true that the " grouping of contacts " theory was there adopted and applied. Essentially the conclusion reached was based upon the intent of the parties and the place of expected performance as the court so found those facts. In that case the parties resided in England at the time the agreement was entered, and there was nothing to indicate their intention to live elsewhere.

At the time the contract was executed in the instant case there can be no doubt that the parties intended the measure of their obligation thereunder to be determined by New York law. Matters of performance of a contract are regulated by the laws of the place where the contract by its terms is to be performed. (*Union Nat. Bank* v. *Chapman,* 169 N. Y. 538; *Swift & Co.* v. *Bankers Trust Co., supra.*) When this contract was made there was, in effect, by intention of the parties a uniting of interpretation, execution and validity with that of place of performance, it being expected that such performance would occur in New York.

The assured elected not to include his spouse within the area of coverage and the insurer, not having assumed the additional

obligation, could not demand an increased premium. While the language of the subdivision of the statute was not set forth, it is automatically a mandatory part of every motor vehicle liability policy issued in New York. (*Globe Ind. Co.* v. *Anastasio,* 5 Misc 2d 238; *New Amsterdam Cas. Co.* v. *Stecker,* 1 A D 2d 629, affd. 3 N Y 2d 1.)

That refund or adjustment of premium was possible under the express terms of the policy appears from the language of Condition 2, which makes provision therefor in the event of disposition or replacement of the car.

The basic nature of the underlying contract of insurance was not changed or altered, nor was an additional risk or obligation assumed by the insurer merely by reason of the change of address indorsement. The indorsement and the refund here were no more than a recognition of the fact that the assured had moved into an area where the risk incidence was lower, the exposure less, and the premium charged should be commensurate therewith. A like result might have been achieved had the insured moved into a rural area of this State.

The indorsement and the policy are to be read together and the indorsement does not abrogate or nullify any provision of the policy unless so stated in the indorsement. (*Thompson-Starrett Co.* v. *American Mut. Liab. Ins. Co.,* 276 N. Y. 266, 271; *Birnbaum* v. *Jamestown Mut. Ins. Co.,* 298 N. Y. 305.) The indorsement is neither repugnant to nor in irreconcilable conflict with the basic provisions of the policy. No later or different intention is expressed nor can it be so inferred as to override that provision which as a matter of law was deemed included in the policy when issued. (Cf. *Poel* v. *Brunswick-Balke-Collender Co.,* 216 N. Y. 310; Insurance Law, § 167, subd. 3.)

The assured seeks by reason of the notification of change of address to saddle the insurer with a new and additional obligation not contemplated by the parties at the time the contract was executed. The minds of the parties then met and agreed upon the exclusion from coverage of the spouse. The mere fact of indorsement of a change of address should not serve to foist liability upon the insurer or expand the area of coverage beyond that agreed upon. Express language or the existence of additional factors from which it may reasonably be inferred that it was the intention of the parties that the spouse be included in coverage is required.

*New Amsterdam Cas. Co.* v. *Stecker* (1 A D 2d 629, affd. 3 N Y 2d 1, *supra*) to which the parties refer, is not applicable here. In that case the insured was a resident of New York and the policy was issued in New York. The accident occurred

in Connecticut and the husband brought suit there against his wife, the insured. In an action in New York by the insurance company for a declaratory judgment the court held the public policy underlying the statute (though the provision was not expressed in the policy) excluded coverage of liability between spouses whether the accident occurred in New York or without the State. (It should be noted that Connecticut has no comparable statute.) The decision reaffirms the view that insurance contracts are construed in light of existing law, legislative intent and purpose, and the language expressed within the four corners of the instrument.

Our law seeks to avoid "excessive, inadequate, unfairly discriminatory or otherwise unreasonable" insurance rates (Insurance Law, § 180). In other words, it seeks to assure that the rate charged shall bear reasonable relation to or be commensurate with the risk assumed and adequate for the class of risk to which they apply. (See Insurance Law, § 183, subd. 1, par. [b].) To accept the version of the assured is to frustrate the statutory objectives and run counter to the declared policy of the State.

Subdivision 3 of section 167 was designed to prevent collusion and fraud. (Cf. *Fuchs* v. *London & Lancashire Ind. Co. of America,* 258 App. Div. 603.) Before the right of coverage upon which a suit might be predicated could exist, it was requisite that such coverage be declared in specific language. (See *General Acc. Fire & Life Assur. Corp.* v. *Ganser,* 2 Misc 2d 18; cf. *Jacobs* v. *United States Fid. & Guar. Co.,* 2 Misc 2d 428.)

In *Merchants Ind. Corp. of N. Y.* v. *Seward* (12 Misc 2d 638) an automobile liability policy issued in New York granted insured the right to garage his automobile in Connecticut for six months of the year and the balance of the time the car was to be garaged in New York. An accident occurred in Connecticut in which the wife was injured. The policy did not contain the provision for coverage of the spouse. The court considered and rejected the "center of gravity" or contact theory. A declaratory judgment was granted plaintiff. The court found that permission to garage the automobile at a specified address in Connecticut did not render inapplicable the provisions of subdivision 3 of section 167 of the Insurance Law, though Connecticut law contained no such restriction on insurer's liability.

The order appealed from should be reversed on the law, the facts and in the exercise of discretion and declaratory judgment granted plaintiff, with costs.

VALENTE, J. (dissenting). When the Legislature in 1937 enacted section 57 of the Domestic Relations Law, which permitted actions between spouses involving torts, it also added subdivision 3 of section 167 of the Insurance Law which provides that " No policy or contract shall be deemed to insure against any liability of an insured because of death of or injuries to his or her spouse or because of injury to, or destruction of property of his or her spouse unless express provision relating specifically thereto is included in the policy ".

In *Fuchs* v. *London & Lancashire Ind. Co.* (258 App. Div. 603, 605) the court, in discussing those amendments, said: " These simultaneous enactments disclose a considered legislative intent to create a right of action theretofore denied, and at the same time to protect insurance carriers against loss through collusive actions between husband and wife ".

In the instant case the plaintiff insurance company issued an automobile liability insurance policy to the defendant on June 19, 1957 at which time defendant was a resident of Westchester County, New York. In September, 1957, the insured moved to Greenwich, Connecticut, and became a domiciliary of that State; and the automobile insured was thereafter garaged in Connecticut. Upon being notified of that change in residence, plaintiff insurance company issued an indorsement to the policy, which changed the insured's residence; and, at the same time, paid the insured a return premium, the amount of which was based on the lower Connecticut rates. While the insured was operating the automobile in Connecticut on March 22, 1958, there was an accident with another automobile owned by a Connecticut resident. At the time, the insured's wife was a passenger in his car and she subsequently commenced an action in Connecticut against her husband and the owner of the other vehicle. When the husband forwarded the process to plaintiff herein, and demanded that plaintiff defend the action on his behalf and pay any judgment that might be recovered against him therein, plaintiff refused on the ground that the policy did not afford coverage for the claim asserted by the wife.

Plaintiff then began the instant action for a declaratory judgment that it is not obligated under the policy of automobile liability insurance to defend the personal injury suit brought by the wife against the insured in Connecticut.

The majority of this court now holds that the contract of insurance is a New York contract, is governed by the laws of New York and that the provisions of subdivision 3 of section 167 of the Insurance Law must be read into the policy to exclude coverage by plaintiff company. In so doing, the majority pro-

ceeds upon a conceptualistic formula wholly divorced from the realities of the situation.

In *Auten* v. *Auten* (308 N. Y. 155) the Court of Appeals abandoned any unitary formula in determining the law to govern a contract where a conflict of laws problem was presented. Instead, the concept was adopted that the test to be applied was the so-called " center of gravity " or the " grouping of contacts " theory of the conflict of laws. As Judge FULD said (p. 160): " Under this theory, the courts, instead of regarding as conclusive the parties' intention or the place of making or performance, lay emphasis rather upon the law of the place ' which has the most significant contacts with the matter in dispute '."

Apart from this approach to the problem, is the additional factor that we are dealing with an insurance contract, where the terms do not rise out of a bargaining process but are fixed beforehand either by the insurance company or the government, or both. (See Ehrenzweig, Adhesion Contracts in the Conflict of Laws, 53 Col. L. Rev. 1072.)

What is the most significant contact in the matter in dispute? In making the indorsement on the policy, the insurance company knew that the insured was then domiciled in Connecticut and that the automobile would be garaged and presumably principally used there. That essential fact immediately distinguishes this case from all of the other cases dealing with related problems. The majority agrees that *New Amsterdam Cas. Co.* v. *Stecker* (1 A D 2d 629, affd. 3 N Y 2d 1) is not applicable to the case at bar. However, the reason for its inapplicability calls for a result contrary to the one the majority reaches in this case. There, as here, the accident occurred in Connecticut and the husband sued his wife, the insured, in Connecticut. But since the insured and her husband were residents of New York and the insured's car was garaged in New York, the courts found that the public policy of New York, as expressed in subdivision 3 of section 167 of the Insurance Law, was applicable to them, and relieved the insurance company of the duty to defend or pay.

Clearly the domestic policy of New York has no extraterritorial effect so as to encompass domiciliaries of other States. The responsibility for regulating incidents of the marital relationship is the primary concern of the State of domicile of the spouses. In enacting section 57 of the Domestic Relations Law which permitted actions between spouses involving torts, New York could only speak for its own domiciliaries and could not project its law into another State. Hence, subdivision 3 of sec-

tion 167 of the Insurance Law, enacted at the same time, would equally be restricted to insurance policies written in New York for persons residing there, since, as stated in *New Amsterdam Cas. Co.* v. *Stecker* (*supra,* p. 7): " The manifest purpose of subdivision 3 of section 167 was to protect insurance carriers from collusive actions between spouses arising out of automobile accidents " — actions which were specifically authorized by the amendment to section 57 of the Domestic Relations Law. The public policy expressed in both statutes was for the benefit of New York residents. Thus, in dealing with the problem at hand, the place where the insured lives and the place where the automobile is used are the most appropriate criteria for the determination of the risk insured.

It is not merely coincidental that in those cases in which subdivision 3 of section 167 of the Insurance Law has been applied it appears that the insured was a resident of New York when the accident occurred. (See *Mertz* v. *Mertz,* 271 N. Y. 466, 469; *Coster* v. *Coster,* 289 N. Y. 438, 440; *New Amsterdam Cas. Co.* v. *Stecker, supra; General Acc. Assur. Corp.* v. *Ganser,* 2 Misc 2d 18; *Merchants Ind. Corp. of N. Y.* v. *Seward,* 12 Misc 2d 638.)

When the plaintiff made the change of address indorsement on the policy and rebated a part of the premium originally paid, it accepted the insured in his status of a resident of Connecticut, or at least on the basis that his car was garaged in Connecticut. The insurance company could not validly presume that a statute in New York expressing the public policy of New York would have extraterritorial effect on a Connecticut resident and his automobile. It was then on notice that thereafter it would have to look to the Connecticut law to determine what terms of the policy were sanctioned. The emphasis on the place where the contract was issued, i.e., New York, became subordinate to Connecticut, where the two substantial elements of the risk insured were present — the residence of the insured and the place where the automobile was kept and used. When proper weight is given to these criteria, they must be regarded as such significant contacts as to be decisive in a pragmatic determination of the applicable law.

We should therefore hold that, after the indorsement of change of address and the rebate of part of the premium, the policy issued by plaintiff to the insured no longer was governed by New York law but was to be construed under the Connecticut law.

Since the determination of plaintiff's liability under the policy depends upon Connecticut law, we should leave the question for

Connecticut to decide. Our own statutes and our public policy are designed to protect New York domiciliaries, and we should accord to a sister State the same privilege of adjudicating the rights of its residents. This is especially so in the field of automobile liability insurance where present conditions have prompted the enactment of legislation by many States to protect their residents from the uninsured motorist and to allocate State funds to accomplish that purpose.

Since the granting of relief in an action for declaratory judgment is discretionary (Rules Civ. Prac., rule 212), we may properly refuse to declare what a Connecticut court might do in determining the question of the applicable internal law of Connecticut. Were the action before us one for damages for alleged breach of the duty to defend, we would be required to reach a determination on the merits, applying the appropriate conflict of law doctrines. But we need not do so in the instant action where we may decline to pronounce any declaratory judgment. In all propriety, we should leave the question of the impact of subdivision 3 of section 167 of the Insurance Law of this State upon the policy in suit to a forum in Connecticut because not only will the Connecticut court be more expert in declaring the internal law of that State but in addition such procedure will attain the more desirable result of uniform treatment to Connecticut residents.

Accordingly, we should affirm the denial of plaintiff's motion for summary judgment and should grant judgment in favor of defendant dismissing the complaint in the exercise of our discretion to decline to pronounce a declaratory judgment for the reasons hereinabove stated.

RABIN and EAGER, JJ., concur with STEVENS, J.; VALENTE, J., dissents and votes to affirm the denial of plaintiff's motion for summary judgment and grant judgment in favor of defendant-respondent dismissing the complaint in opinion, in which BOTEIN, P. J., concurs.

Order, entered April 5, 1960, denying plaintiff's motion for summary judgment, reversed, on the law, on the facts and in the exercise of discretion, with $20 costs and disbursements to the appellant, the motion for summary judgment granted, with $10 costs, and summary judgment directed in favor of plaintiff-appellant. Settle order on notice.