**AMERICAN SERVICE MUTUAL INSURANCE COMPANY, a Corporation, Appellant,**

**v.**

**Joe BOTTUM, III, Special Administrator of the Estate of Walter William Schwantes, Deceased, Matthew Spirit Track, Marilyn Black Bonnett Roubideaux and Lumbermens Mutual Casualty Company, Appellees.**

**No. 18439.**

United States Court of Appeals Eighth Circuit.

Jan. 17, 1967.

Carleton R. Hoy, of Davenport, Evans, Hurwitz & Smith, Sioux Falls, S. D., for appellant.

Merle Johnson, of Woods, Fuller, Shultz & Smith, Sioux Falls, S. D., for Lumbermens Mut. Cas. Co.

Charles Poches, Jr., of Roubideaux, Poches & Reade, Fort Pierre, S. D., for Joe Bottum, III, and others.

Before MATTHES and LAY, Circuit Judges and HARPER, District Judge.

LAY, Circuit Judge.

This constitutes another of the multitude of declaratory actions under Tit. 28, U.S.C. § 2201, where an insurance company, after premium is paid, attempts to abort its policy when a loss occurs. The trial court found against the carrier and we must affirm.

One Serge Alvarez was issued an automobile liability policy by appellant, American Service, on November 18, 1963, while stationed in Memphis, Tennessee, with the military service. In March, 1964, Alvarez was transferred to El Toro, Santa Ana, California. When he arrived at El Toro, he notified his insurance company of the change of address. On March 18, 1964, an endorsement was added to the policy changing the address. On March 20, 1964, an identical endorsement was added reciting an additional premium and changing the principal place of garaging to read El Toro, Santa Ana, California.[1] Alvarez paid the added premium for continued coverage in California.

The original policy provided "this policy shall not be valid unless countersigned by a duly authorized representative of the company." Both endorsements merely recite that they have been countersigned by an authorized representative in Montgomery, Alabama. The policy covered a 1958 Oldsmobile which was loaned by Alvarez, the named assured, to a Robert Schwantes for the purpose of taking Schwantes' children from Santa Ana, California, to St. Paul, Minnesota. On June 2, 1964, during the return trip, the vehicle was involved in a collision in South Dakota. At the time of the accident, Robert Schwantes had given permission to his brother, Walter Schwantes, to drive the car. Walter Schwantes was killed. The personal injury claimants, appellees herein, brought personal injury suits against his estate.

American Service had the usual restricted clause in its policy which insured only those persons operating the Alvarez automobile with the "express permission" of the assured. American Service denied that Walter Schwantes was an insured under the policy since he did not have the "express permission" of Alvarez to drive the car.

The lower court made the following findings: (1) the law governing the construction of said contract and the obligations thereunder were to be determined by the law of the state of the forum, to-wit, South Dakota, citing Klaxon v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477;

---

[1] "Attached to and forming a part of American Service Mutual Insurance Company policy number as shown, and countersigned by an authorized representative in Montgomery, Alabama.

"It is mutually understood and agreed between the company and insured that this policy is hereby amended as follows: In consideration of an additional premium of $32.80 (B.I. $16.40 P.D. $16.40) the principal place of garaging is amended to read El Toro, Santa Ana, California.

"The name and address of Insured now read as shown on this endorsement.

"Cpl. Serge D. Alvarez
"VMF–312 MAG 033 MCAS
"El Toro, Santa Ana, California
"All other terms and conditions of this policy remain unchanged."

(2) under South Dakota law of conflict of laws a contract is to be construed in accordance with the law of the place where made; (3) the test of the place of the contract is where the last act is done necessary to give the contract validity, citing Briggs v. United Services Life Insurance Co., 80 S.D. 26, 117 N.W.2d 804 (1962); (4) California was the place where the last act was done, to-wit, adding of the endorsement; (5) in addition, California has the most significant contacts in relationship with the contract;[2] (6) Walter Schwantes did not have the "express permission" of the assured to drive the car; (7) however, Walter Schwantes had the "implied permission" of the assured under the California omnibus statute, which controlled the policy.

The lower court properly denied American Service any relief from its obligations under the contract.

American Service on appeal asserts (1) Alabama law applies under South Dakota's conflict of laws since the last act necessary to give the contract validity was countersignature by the company's agent in Alabama; (2) there was not a new contract to change the place of contract from the original issuance in Tennessee, therefore, alternatively, Tennessee law applies; (3) the California omnibus statute does not have extra territorial effect in South Dakota; and (4) California law requires policy certification before the omnibus clause is applicable.

■■ An obvious novation occurred at the time the endorsement was issued

2. The tentative draft of the Restatement has adopted this theory: "The validity of a contract is determined by the local law of the state with which the contract has its most significant relationship * * *." See Restatement (Second), Conflict of Laws, § 332 (Tent.Draft No. 6, 1960). See also 17 C.J.S. Contracts § 12(2), pp. 592–593. See also Fleet Messenger Service, Inc. v. Life Ins. Co. of North America, 2 Cir., 315 F.2d 593 (applying New York law). This approach applies the law of the state which theoretically has the greater interest in the dispute. However, its greater virtue is in avoiding the hair-splitting logic found in other conflict rules. For a capsule analysis of the evolution of conflicts law in this area see Justice Black's dissent in Clay v. Sun Ins. Office, 363 U.S. 207, 217–218, 80 S.Ct. 1222, 4 L.Ed.2d 1170. See also National Union Fire Ins. Co. of Pittsburgh, Pa. v. D & L Const. Co., 8 Cir., 353 F.2d 169, 172 where this court applied a rule, involving federal law, complimentary to the modern trend. We said a "parties' specific intention concerning what law will control their agreements is binding on courts only where there is a logical basis for applying such law."

While we may feel the modern rule is far better than a state's existing law, a federal court is not at liberty to adopt that rule in every case. A particular sensitivity toward existing law with an awareness of definite signs of change must govern our inquiries in this area of determining state law. As has been

noted: "The federal court must keep in mind * * * that its function is not to choose the rule which it would adopt for itself, if free to do so, but to choose the rule which it believes the state court, from all that is known about its methods of reaching decisions, is likely in the future to adopt." Wright, Federal Courts (1963 ed.) at 206. See Bernhardt v. Polygraphic Co. of America, Inc., 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 with particular view to J. Frankfurter's concurring opinion at p. 205, 76 S.Ct. at p. 277. See also Meredith v. City of Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9.

While, for reasons discussed in the opinion we find it unnecessary to decide this question, we must comment that the Briggs case was decided as recent as 1962. There also exists the legislative mandate of South Dakota § 10.0106 relating to questions of performance, which has not been repealed. These pronouncements serve to adumbrate any indication of change of South Dakota law in this area. As an example of when a federal court may ignore existing state law to apply a different rule of law, see Ideal Structures Corp. v. Levine Huntsville Develop. Corp., D.C.Ala., 251 F.Supp. 3, where the court applied the modern "grouping of contracts" rule over the older "place of contracting" rule which a state decision last held controlling in 1926. See also Putman v. Erie City Manufacturing Co., 5 Cir., 338 F.2d 911, 917–923, for an enlightened approach to this problem.

showing the assured had changed his principal place of garaging the vehicle to California.[3] The circumstances necessitating the increased premium involved, although extending the same financial limits of coverage to the named insured, reflected an additional risk to the insurer. The policy did not provide for any rate adjustment [4] or any subsequent adjustment in performance on the part of both parties. Appellant could not compel the insured under the terms of the contract to respond to an increase in premium. Yet, an additional risk was being created by the assured moving into a new rate area and undoubtedly, if the additional premium had not been paid, cancellation would have resulted. Under the law of novation, a party who gains additional consideration in exchange for a new risk or obligation cannot effectively assert the contract as being simply extended.[5] Inherent in such rate increase is the underwriting experience of not only the larger traffic volume, the greater probability of accident or risk, but indirectly the broader insurance coverage required of automo-

3. Appellant relies on Employers Liability Assurance Corporation v. Aresty, 11 A.D. 2d 331, 205 N.Y.S.2d 711, 715:

    "The basic nature of the underlying contract of insurance was not changed or altered, nor was an additional risk or obligation assumed by the insurer merely by reason of the change of address endorsement."

    An assured under a New York policy moved to Connecticut. A change of address endorsement was attached and premium was *reduced*. The court held at the time the accident occurred in Connecticut, New York law applied. Despite many distinguishing factors, we are more favorably impressed with the reasoning of the dissenting judges of both the lower and the superior court. The dissent, *inter alia* reasoned:

    "When the plaintiff made the change of address endorsement on the policy and rebated a part of the premium originally paid, it accepted the insured in his status of a resident of Connecticut, or at least on the basis that his car was garaged in Connecticut. * * * It was then on notice that thereafter it would have to look to the Connecticut law to determine what terms of the policy were sanctioned. The emphasis on the place where the contract was issued, i. e., New York, became subordinate to Connecticut, where the two substantial elements of the risk insured were present—the residence of the insured and the place where the automobile was kept and used." 205 N.Y.S.2d at 719.

4. In Employers Liability Asssurance Corporation v. Aresty, supra, the court pointed out that "refund or adjustment of premium was possible under the express terms of the policy." See Aetna Life Ins. Co. v. Dunken, 266 U.S. 389, 45 S.Ct. 129, 69 L.Ed. 342, where the court, in recognizing that this type of question "is a matter not always free from difficulty," noted that the provisions in the first policy provided for the subsequent change.

    "The terms of the new policy were fixed when the original policy was made. * * * *It was issued not as the result of any new negotiation or agreement but in discharge of pre-existing obligations*. It merely fulfilled promises then outstanding; and did not arise from new or additional promises. *The result in legal contemplation was not a novation but the consummation of an alternative specifically accorded by, and enforceable in virtue of, the original contract*. If the insurance company had refused to issue the second policy upon demand, the insured could have compelled it by a suit in equity for specific performance." (Emphasis supplied) 266 U.S. at 399, 45 S.Ct. at 133.

    In Wastun v. Lincoln National Life Ins. Co., 12 F.2d 422, 8 Cir., it was held that a policy for reinstatement should be considered an Indiana contract even though the original policy provided that it could be reinstated if it lapsed but arrearages in premiums must be paid and evidence of insurability satisfactory to the insurer must be provided. The effect was to consider the reinstated policy a new contract. To the same effect see Inter-Southern Life Ins. Co. v. Kleber, 8 Cir., 50 F.2d 154. See also Anno. 3 A.L.R.3rd 646.

5. A novation can exist according to South Dakota law: "By the substitution of a new obligation between the same parties, with intent to extinguish the old obligation." S.D.C. 47.0238. The intent may be inferred from the circumstances. Hyde v. Hyde, 78 S.D. 176, 99 N.W.2d 788. See also City Nat'l Bank of Huron, S. D. v. Fuller, 8 Cir., 52 F.2d 870, 79 A.L.R. 71. See also Williston on Contracts, Vol. 6, § 1865 (Revised ed. 1938).

bile insurers issuing policies within the State of California.[6] California had a general omnibus statute in effect [7] at the time the policy endorsements were issued to Alvarez in California.

■ The trial court relied on the rule in Briggs v. United Services Life Ins. Co., supra, where the court said:

"A contract must be *construed* in accordance with the law of the place where made unless it is shown that it was the intention of the parties to be bound by the law in some other place.[8] * * * The test of the place of a contract is the place where the last act is done by either of the parties which is necessary to complete the contract and give it validity." (Emphasis supplied) 117 N.W.2d at 807.

Appellant argues the last necessary act to give validity to the endorsement was the countersignature by the company in Alabama. The lower court found the last act was "the endorsement dated March 20, 1964" added in California. We submit, however, under this rule the determinative factor is the last act to give "validity" to the endorsement, not the endorsement itself.

■ However, in the application of the "last act" test neglected is the basic law of South Dakota under either the *Briggs* case or the statute. The conflict of law rule only becomes operable when the law of the state *intended by the parties* is not otherwise expressed or implied in the contract. Judge Donovan in Travelers Ins. Co. v. American Fidelity & Cas. Co., D.C. Minn., D.C., 164 F.Supp. 393, faced with a similar question under Minnesota law, stated:

"The intention of the parties as to which law shall govern their contract is, ordinarily, decisive, the conflict of laws rules in this regard being, for the most part, presumptions employed where a clear expression of intention is lacking." [9] 164 F.Supp. at 398.

■ In the present instance, the intention to apply California law is clear.

6. There exists a serious question whether an insurer can accept higher premiums under a new risk area without *waiving* application of prior governing law. See, e. g., Blair v. New York Life Ins. Co., 40 Cal.App.2d 494, 104 P.2d 1075. The requirement of a higher premium in an area of greater risk should, logically, entitle the insured to all the benefits of his bargain; specifically, all the protection accorded by the laws governing that particular risk area.

7. "Section 1. Section 11580.1 is added to the Insurance Code, to read:
"11580.1 No policy of liability insurance covering liability arising out of the ownership, maintenance or use of any motor vehicle shall be *issued or delivered* in this state to the owner of a motor vehicle. * * * unless it contains the following provisions:
"(d) * * * to the same extent that coverage is afforded such named insured in respect to said described motor vehicles, any other person using, * * * said motor vehicles, provided the motor vehicles are being used by the named insured or with his permission, express or implied. * * *" (Emphasis supplied)

8. South Dakota likewise has a statute S.D.C. 10.0106, which reads as follows:
"A contract is to be *interpreted* according to the law and usage of the place where it is to be performed or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." (Emphasis supplied)
See Dawson v. Fidelity and Deposit Co. of Md., D.So.Dak.S.D., 189 F.Supp. 854.
It is very difficult to determine at times whether an obligation under a contract is one of "construction" or one of "interpretation". See Restatement of Conflict of Laws, § 334, § 358; see comment (b) under § 358 indicating in many instances there exists no logical line separating a question of "obligation" of the contract from a question of "performance". The problem involved herein is typical of this confusing area. See Wentraub, Contracts and Conflicts of Laws, 46 Ia.L.Rev. 713.

9. Cf. Lauritzen v. Larsen, 345 U.S. 571, 588–589; National Union Fire Ins. Co. of Pittsburgh, Pa. v. D & L Const. Co., 8 Cir., 353 F.2d 169, cert. den. 384 U.S. 941, 86 S.Ct. 1462, 16 L.Ed.2d 539; First Am. Nat. Bank of Nashville v. Automobile Ins. Co., 6 Cir., 252 F.2d 62.

The increased premium reflecting California rates, the total circumstances surrounding the issuing of the endorsement in California, the parties agreeing upon California being the new place of garaging the vehicle, and implicit therein, the principal use of the car to be in California, are all clear manifestations of intent.[10] This is the only natural and logical consequence of such action. There can be no ambiguity or doubt as to what was intended under the circumstances.

■ The instant case readily demonstrates perfunctory reliance on the place of countersignature can be misleading as an aid in determining which law applies. This record is silent as to the mechanics of the countersignature appearing on the policy. Most "countersignatures" originate in gross at the companies' printing presses before an individual policyholder has even considered purchasing a contract. Whether we view the effect of this signature from a legal or a factual point of view such a rule gives strength to a conceptualistic formal requirement, allowing little consideration of the parties true intent or other logical bases to apply the law of a place which has a substantial relationship to the contract. Insurance contracts are prime examples of "contracts of adhesion" where the customer is required to "adhere" to the standard contract form. Insurers, due to their greater bargaining position, should not be allowed to use this as a wholesale method for controlling applicable law. Consideration should be given all circumstances involved before placing much emphasis on formalistic ritual. See Standard Oil Company of California v. Perkins, 9 Cir., 347 F.2d 379; Osborn v. Boeing Airplane Company, 9 Cir., 309 F.2d 99; Steven v. Fidelity and Casualty Co. of New York, 58 Cal.2d 862, 27 Cal.Rptr. 172, 377 P.2d 284; Neal v. State Farm Ins. Companies, 188 Cal.App.2d 690, 10 Cal.Rptr. 781; Bekken v. Equitable Life Assurance Society, 70 N.D. 122, 293 N.W. 200; Kessler, Contracts of Adhesion—Some Thoughts About Freedom of Contract, 43 Col.L.Rev. 629; Ehrenzweig, Adhesion Contracts in the Conflict of Laws, 53 Col.L.Rev. 1072.

California passed a general omnibus statute in 1963. Prior to the passage of this act, California courts applied a similar law, still included in their Financial Responsibility Act, as a matter of public policy, to every automobile policy written in the State, whether certified or not. See, e. g., Wildman v. Government Employee's Ins. Co., 48 Cal.2d 31, 307 P.2d 359; Truck Insurance Exchange v. Am. Surety Co., 338 F.2d 811; Interinsurance Exchange of the Automobile Club of Southern California v. Ohio Casualty Ins. Co., 58 Cal.2d 142, 23 Cal.Rptr. 592, 373 P.2d 640. The 1963 "omnibus statute" was obviously passed

10. See Lumberman's Mut. Cas. Co. v. Blake, 94 N.H. 141, 47 A.2d 874 (state of countersignature held not controlling where parties contemplated principal place of performance to be in another state). In Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475, 170 A.2d 22, the policy required final approval at the home office in Massachusetts while the insured resided in New Jersey. The court said, applying New Jersey law, that:
"Under the circumstances it may not realistically or fairly be said that the local insured and the Company both contracted with the Massachusetts law in mind and it would be not only unjust to the local insured but also contrary to the true interests of our State to deny to him the benefits of the favorable local law." 170 A.2d at 32.

In Jenkins v. Indemnity Insurance Co. of North America, 152 Conn. 249, 205 A. 2d 780, the Court said:
"Indeed, the assumption underlying our applicable conflicts rule is that when parties enter into a contract they do so with the law of a specific jurisdiction in mind. * * * There is nothing in the instant case to suggest that this assumption is unfounded with respect to this insurance contract. On the contrary, in the declarations portion of the policy, the plaintiff stated that his residence was in Bronxville, New York, and that his automobile would be principally garaged there. This declaration gives no hint that the parties thought of this contract as other than a New York transaction." 205 A.2d at 783.

to insure broad coverage to all automobile policies regardless of certification.[11]

■■ Finding California law applicable, and since the omnibus statute supersedes any clause in the policy to the contrary,[12] we are not confronted with any extra territorial effect of the California statute. The policy clearly reads that it shall apply throughout the United States and all its territories. Appellant does not challenge the lower court's finding that Walter Schwantes had the implied permission of the insured. Under these circumstances, we find American Service Mutual Insurance Co. is primarily liable and is obligated to defend and pay any judgment, to the limits of its policy, that might be obtained against the assured or any one with the status of an assured, as determined herein.

Judgment affirmed in accordance with this opinion.

---

11. For similar interpretation of general omnibus statutes, see Chatfield v. Farm Bureau Mut. Auto Ins. Co., 4 Cir., 208 F.2d 250; Utica Mut. Ins. Co. v. Rollason, 4 Cir., 246 F.2d 105; Shanahan v. Midland Coach Lines, 268 Wis. 233, 67 N.W.2d 297. See generally Universal Underwriters Ins. Co. v. Wagner, 8 Cir., 367 F.2d 866, discussion re California law in note 18.

12. In Wildman v. Government Employees' supra, 307 P.2d at 364, it is stated:

"It appears that section 415 must be

made a part of every policy of insurance issued by an insurer since the public policy of this state is to make owners of motor vehicles financially responsible to those injured by them in the operation of such vehicles."
See also Bohrn v. State Farm Mutual Ins. Co., 226 Cal.App.2d 497, 38 Cal.Rptr. 77; Interinsurance Exchange of the Automobile Club of Southern California v. Ohio Casualty Ins. Co., 58 Cal.2d 142, 23 Cal. Rptr. 592, 373 P.2d 670; Wheeling v. Financial Indemnity Co., 201 Cal.App.2d 36, 19 Cal.Rptr. 879.