AMERICAN HOME ASSURANCE CO., Respondent, v EM-
PLOYERS MUTUAL OF WAUSAU, Appellant, and SANTI-
AGO SUAREZ et al., Respondents, et al., Defendants.

First Department, December 9, 1980

#### APPEARANCES OF COUNSEL

*Anthony J. McNulty* of counsel *(William F. McNulty* with him on the brief; *Hendler & Murray,* attorneys), for appellant.

*Stanley Wilkins* of counsel *(Smith, Mazure & Wilkins, P. C.,* attorneys), for respondent.

*Ira Bartfield* of counsel *(Fuchsberg & Fuchsberg* and *Irving Brand,* attorneys), for respondents.

#### OPINION OF THE COURT

SULLIVAN, J.

At issue are the validity and enforceability of a provision

in a Connecticut-issued automobile liability insurance policy excluding coverage for bodily injury arising out of the insured's ownership "of any automobile while rented to others." After tender of the issue in an agreed statement of facts, Trial Term found that the substantive law of New York, where the accident occurred applied, and that the rental exclusion contravened New York's public policy and was therefore invalid. We disagree and reverse.

Chinetti, an automobile dealer in the business of selling foreign cars, with its principal place of business in Greenwich, Connecticut and an office in New York, was insured by Employers Mutual under a combination casualty policy issued in Connecticut for a one-year term commencing June 14, 1975. The policy included garage liability insurance which provided bodily injury liability coverage for Chinetti-owned automobiles with limits of $500,000 each person and $1,000,000 each occurrence.

Employers had certified to the State of Connecticut that its policy on Chinetti's dealer-owned automobiles was issued in conformity with the laws of Connecticut, and 16 months before the policy's issuance the New York State Department of Insurance had also approved Employers garage liability form. The policy also contained a New York State mandatory personal injury protection indorsement providing for the payment of first-party benefits.

On January 25, 1974, American Home had issued an umbrella liability policy to Chinetti for a three-year term commencing January 27, 1974, with a $1,000,000 limit on any one occurrence for personal injury liability in excess of Employers underlying garage liability coverage of $500,-000/$1,000,000 or in excess of $10,000 with respect to each occurrence not covered by Employers underlying insurance.[1]

On October 30, 1975, within the term of each of these policies, a Chinetti-owned Ferrari, registered in Connecticut, was involved in an accident in Nassau County, New York, on a public road which the police had closed to traffic.

---

1. Although not part of the agreed statement of facts, it is clear that an Employers underlying policy was in effect on January 25, 1974. Examination of the Employers policy in issue reveals that it was a renewal.

As a result, one Santiago Suarez sustained serious physical injuries, for which he and his wife have instituted an action in New York against Chinetti and others for damages. The Ferrari, which had been garaged at Chinetti's Connecticut showroom, had been rented in Connecticut to Chance Three Productions, Inc. for use in filming a Revlon commercial, and was delivered by truck to the site of the filming in Nassau County. Although not in the car rental business, Chinetti occasionally did rent its automobiles but without Employers knowledge.

At the time of the accident the Ferrari was being operated by Lawrence Gotch, a Chance employee, who was insured under an automobile liability policy issued by Allstate Insurance Company which provided bodily injury limits of $100,000/$300,000, and included coverage for accidents involving a nonowned vehicle. In addition, both Chance and Revlon, which with Gotch are defendants in the Suarez action, were covered by an automobile liability insurance policy at the time of the accident.

Employers disclaimed coverage, citing exclusion (e) (2) (ii) of the garage liability section which provides that the policy does not apply *"to bodily injury or property damage arising out of the ownership, maintenance, operation, use,* loading or unloading *of any * * * automobile * * * while rented to others by the named insured* unless to a salesman for use principally in the business of the named insured". (Emphasis added.) Thereafter American brought this action, initially only against Employers, but to which, pursuant to prior order of this court *(American Home Assur. Co. v Employers Mut. of Warsaw,* 64 AD2d 563), the Suarezes and Chinetti have been made parties,[2] seeking a declaration that Employers rental exclusion is null and void. American contends that exclusion clauses of the type here involved have uniformly been considered violative of the public policy of New York and found to be unenforceable.

---

2. Chinetti is in default. The Suarezes have appeared and answered. Although not a signatory to the stipulation of facts, their attorney represented to counsel for both insurers that he did not wish to participate in the proceedings before Trial Term.

In applying New York law to the determination of whether the rental exclusion was valid, Trial Term relied upon numerous factors including Chinetti's maintenance of a branch office in New York, a covered location in Employers policy; the rental of the Ferrari by Chinetti with knowledge that it was to be used in New York; the New York residency of the injured party, Suarez[3] and, of course, the occurrence of the accident on a public road here. In our view these factors are not persuasive. No evidence exists to suggest that Chinetti's New York office played any role in the transaction. The Ferrari was garaged, registered, rented and delivered to the lessee, Chance, in Connecticut. And while it may be fairly inferred that Chinetti was aware that the Ferrari was to be driven only in New York during the term of the rental agreement, inasmuch as it was transported here by truck, Chinetti's knowledge is neither binding on Employers nor relevant to the interpretation of an insurance contract written four and one-half months earlier. Thus, the situs of the accident is New York's only material, albeit not insignificant, nexus to this occurrence.

At least until 1954 the traditional New York conflict of laws rule in contractual matters had been that " 'All matters bearing upon the execution, the interpretation and the validity of contracts * * * [were] determined by the law of the place where the contract [was] made' ", as distinguished from matters relating to their performance, which were " 'regulated by the law of the place where the contract, by its terms, [was] to be performed.' " *(Swift & Co. v Bankers Trust Co.*, 280 NY 135, 141; *Union Nat. Bank of Chicago v Chapman*, 169 NY 538, 543; see, also, *Zwirn v Galento*, 288 NY 428; *United States Mtge. & Trust Co. v Ruggles*, 258 NY 32, 38.)

In *Auten v Auten* (308 NY 155), decided in 1954, the Court of Appeals, relying, in part, upon its earlier decision in *Rubin v Irving Trust Co.* (305 NY 288, 305), applied the more flexible "center of gravity" or "grouping of contacts"

---

3. Suarez' residence was not included within the agreed statement of facts. In any event his residency in New York, if that be the case, is not a determinative factor.

test *(Auten v Auten, supra,* at p 160) in determining whether a wife's institution of a separation action in England operated as a rescission and repudiation of her right to support payments under a separation agreement executed in New York. The court noted, however, that "even if we were not to place our emphasis on the law of the place with the most significant contacts, but were instead simply to apply the rule that matters of performance and breach are governed by the law of the place of performance, the same result would follow" because the parties could not "have expected or believed that any law other than England's would govern the effect of the wife's institution of a separation action." *(Auten v Auten, supra,* at p 163.)

The *Auten* "center of gravity" or "grouping of contacts" rule continues to be the test in contract actions (see, e.g., *International Planning v Daystrom, Inc.,* 24 NY2d 372) and has also been applied in tort actions (see *Babcock v Jackson,* 12 NY2d 473). But even while adhering to the view that the traditional conflict of laws rule should "no longer be slavishly followed", the Court of Appeals has held that the place where the contract was made is still "a significant contact in applying the center of gravity rule". *(Matter of Havemeyer,* 17 NY2d 216, 221.)

*Employers' Liab. Assur. Corp. v Aresty* (11 AD2d 331, affd 11 NY2d 696), decided by this court after *Auten (supra),* presents a striking parallel to the case at bar. An automobile liability insurance policy had been issued in New York without the specific provision required to cover an insured's liability to his spouse for death or personal injuries (see Insurance Law, § 167, subd 3). After the policy became effective, the insured moved to Connecticut, thus prompting the issuance in New York of a change-of-address indorsement and a refund of a portion of the premium. Thereafter, the automobile covered by the policy was involved in an accident in Connecticut, and as a result the insured's wife commenced a personal injury action against him. The insurer sought a declaration that it was not obligated to defend or to pay any judgment which might be entered against the insured as a result of such a lawsuit. Rejecting the argument that the issuance of the indorse-

ment and premium refund constituted the making of a new contract so as to subject the policy to the application of Connecticut law, the effect of which, presumably, would be the inclusion of the insured's liability to his spouse within the policy's embrace, this court held: "The execution, interpretation and validity of a contract is determined by the law of the place where the contract is made. The obligations of the parties thereunder are similarly determined. *(Swift & Co. v. Bankers Trust Co.*, 280 N.Y. 135.) The exception to this general rule is where the parties at the time of the making of the contract entertained a different view or intention. If they had a view that the contract would be executed elsewhere then the contract is to be considered according to the law of such place." *(Employers' Liab. Assur. Corp. v Aresty*, 11 AD2d 331, 333, *supra.)*

In *Mindell v Travelers Ind. Co.* (46 AD2d 263, affd 38 NY2d 815), the Fourth Department found that a New York resident injured in Canada but suing in New York could not benefit from the minimum bodily injury coverage requirements ($35,000) of Canadian law, applicable both to resident and nonresident claimants alike, because the policy, as permitted by the law of New York, where the parties entered into the contract, had fixed a $10,000 limit of liability. The court held (pp 266, 267):

"[i]t seems to us to be highly questionable whether a law of Ontario may be effective to alter rights and limitations created by a contract entered into in New York by a New York resident and a corporation authorized to do business here—especially when the statute is contrary to an express provision in the policy * * *

"No reason appearing why the Canadian law is entitled to be given effect to alter and override the insurance contract from which defendant's liability derives, we conclude that the applicable limit of coverage should be $10,000, as stated in the policy."

In *Government Employees Ins. Co. v Sheerin* (65 AD2d 10), the Second Department recently confirmed the vitality of the *lex loci contractus* doctrine. There, an insurer sought a declaration that it had validly canceled for nonpayment of premium an automobile liability policy written and de-

livered in New Jersey on a vehicle registered in that State. The accident occurred in New York. Faced with the question of whether the issue of cancellation should be decided in accordance with New York law, or the law of New Jersey, whose cancellation requirements were less stringent, the court held (p 13) : "It is obvious that New Jersey law should have been applied in this case. Where the action is one involving the rights and duties of the parties to an automobile insurance contract, the law of the State where the policy was written, as evidence [*sic*] by the parties' understanding as to the principal location of the insured risk, would be controlling, irrespective of the fact that the accident occurred in another State *(New Amsterdam Cas. Co. v Stecker*, 3 NY2d 1; *Colonial Penn Ins. Co. v Minkoff*, 40 AD2d 819). At bar, New York's only connection with this dispute between insurer and insured is the site of the accident." Similarly, as the statement of stipulated facts discloses, the site of the accident is this State's only nexus to the Suarez-Chinetti dispute.

In addition to those factors already mentioned as supportive of its finding that New York law applied, Trial Term relied upon the New York no-fault indorsement attached to the Employers policy as indicative of the parties' intent that the policy provide coverage for any accident occurring within this State. It is apparent that the no-fault indorsement was included in the policy to reflect Chinetti's maintenance of a New York City office and the parties' recognition of the eventuality that, as a result, its automobiles would be operated in this State for either demonstration purposes or transfer to and from its Connecticut showroom. The indorsement simply cannot be construed as an indication that the parties intended that the rental exclusion was not to apply to a New York accident.

It is equally obvious that the parties contemplated and made specific provision for the out-of-State operation of Chinetti's automobiles in jurisdictions whose minimum motor vehicle financial responsibility requirements might be greater than the coverage provided in the policy.[4] In such

---

4. The out-of-State insurance clause in Employers policy provided: "If, under the provisions of the motor vehicle financial responsibility law or the

event, the out-of-State insurance clause provided that the limits of liability and kinds of coverage afforded by the policy were to conform to the laws of such jurisdictions. The presence of this clause in the policy only strengthens the conclusion that the parties intended that the express provisions of the insurance contract were to control, irrespective of the situs of the accident.

Under the law of Connecticut, where the contract was written, the rental exclusion is valid, inasmuch as it is expressly authorized by section 38-175a-5 (c) [11] (B) (ii) of the Connecticut Insurance Department Regulations, effective February 1, 1975. On the other hand, a regulation of the Department of Insurance of the State of New York, applicable to all automobile liability policies issued pursuant to section 311 (subd 4, par [a]), of the Vehicle and Traffic Law, enumerates the exclusions which the superintendent has authorized, and the rental exclusion is not among those specified. (11 NYCRR 60.2.) Consequently, in the final analysis, we must decide whether the exclusion, valid in Connecticut, is enforceable in New York, the forum State.

Although found in a contract, the rental exclusion is effectively a creation of the State of Connecticut, which, in the exercise of its supervision of the insurance industry, has given its imprimatur to the use of such exclusion in policies issued subject to its jurisdicton. The courts of this State may not impair the obligation or provision of a contract into which the parties validly entered in a sister State under the applicable law of such State. (US Const, art I, § 10, cl 1; art IV, § 1.)

A foreign statute or regulation "is not law in this state,

---

motor vehicle compulsory insurance law or any similar law of any state or province, a nonresident is required to maintain insurance with respect to the operation or use of a motor vehicle in such state or province and such insurance requirements are greater than the insurance provided by the policy, the limits of the company's liability and kinds of coverage afforded by the policy shall be as set forth in such law, in lieu of the insurance otherwise provided by the policy, but only to the extent required by such law and only with respect to the operation or use of a motor vehicle in such state or province; provided that the insurance under this provision shall be reduced to the extent that there is other valid and collectible insurance under this or any other motor vehicle insurance policy. In no event shall any person be entitled to receive duplicate payments for the same elements of loss."

but it gives rise to an obligation, which, if transitory, 'follows the person and may be enforced wherever the person may be found' ". *(Loucks v Standard Oil Co. of N.Y.*, 224, NY 99, 110, citing *Slater v Mexico Nat. R.R. Co.*, 194 US 120 and other cases.) Thus, unless enforcement would be contrary to our law, the courts of this State must enforce the foreign right *(Mertz v Mertz*, 271 NY 466). New York has long recognized that enforcement of the laws of another State "is not contrary to our public policy unless to do so would be manifestly injurious to the public interest or shocking to our morals or contrary to fundamental principles of justice or 'deep rooted traditions of the common weal.' " *(Shannon v Irving Trust Co.*, 275 NY 95, 103, citing *Hollis v Drew Theol. Seminary*, 95 NY 166; see, also, *Coster v Coster*, 289 NY 438, 442; *Loucks v Standard Oil Co. of N.Y.*, 224 NY 99, 110, *supra.*)

Applying such a standard, we cannot find that Employers rental exclusion violates the public policy of this State, even though its use has not been sanctioned, at least as to any policy issued pursuant to the Motor Vehicle Financial Security Act (Vehicle and Traffic Law, art 6). That New York's statutory or regulatory scheme is silent on the subject or even differs, is by itself, insufficient to demonstrate a public policy against the rental exclusion (see *Loucks v Standard Oil Co. of N.Y.*, 224 NY 99, 110-111, *supra)*, especially where, as here, the New York State Superintendent of Insurance has approved the form containing the exclusion.[5]

Moreover, as stipulated by the parties, three other policies affording primary liability coverage for this accident were in effect,[6] as well as American's excess coverage of $500,-000/$1,000,000 over Chinetti's $10,000 retention for each occurrence not covered by Employers primary policy.[7] Thus,

---

5. It should be noted, however, that this approval is not the *sine qua non* to our finding.

6. One of these insurers has brought a declaratory action, the outcome of which, we are told, awaits the disposition of this appeal.

7. Pursuant to an arbitration award Employers was held liable for the payment of first-party benefits to Suarez. At trial American contended that this award collaterally estopped Employers from disclaiming coverage. Trial Term rejected this argument, rendering a specific declaration to that effect, in both its decision and the judgment entered thereon, because the arbitrator had "specifically found" that the rights and liabilities between Employers and its insured,

not only are the Suarezes not realistically confronted with the specter of being denied the protection of New York's minimum insurance coverage of $10,000/$20,000 for this accident (see Vehicle and Traffic Law, § 311, subd 4, par [a]), they have available American's excess coverage of $500,000/$1,000,000 over Chinetti's $10,000 retention. Incantations of public policy which conjure up the image of a hapless accident victim bereft of adequate insurance protection cannot obscure the true nature of this controversy. It is no more than a dispute between a primary insurer and the excess carrier as to whose policy will cover Chinetti's liability. No public policy interest, significant or otherwise, is affected whichever insurer is held liable. In either event, the Suarezes are afforded protection up to at least $500,000/$1,000,000 insofar as Chinetti's liability is concerned, except that under American's policy the first $10,000 would be for Chinetti's account.

*Motor Vehicle Acc. Ind. Corp. v Continental Nat. Amer. Group Co.* (35 NY2d 260), upon which Trial Term relied in reaching a contrary conclusion, did not involve a policy exclusion, but rather a restriction in a private rental agreement between the insured, a car rental agency, and its lessee. The agreement limited the operation of the vehicle to the lessee or an adult member of his immediate family and prohibited the lessee from surrendering use of the vehicle to any other person without first obtaining the lessor's consent. At the time of the accident the vehicle was being operated by a nonauthorized user with the express permission of the lessee but without the consent of the lessor. The Court of Appeals held (p 264) that the insurer could not disclaim on the basis of the agreement since "[t]he restrictions sought to be imposed * * * violate the public policy of this State. A slight deviation from such a restrictive lease could render an injured victim devoid of adequate protection, which is contrary to the legislative intent envisaged by section 388 of the Vehicle and Traffic Law." Because of the

Chinetti, were "not in issue" in such proceeding and the doctrine of collateral estoppel was not applicable to issues not specifically addressed by the arbitrator. In any event, American has not urged this point on appeal and it may be deemed abandoned. (See *Lee v Corn Exch. Bank Trust Co.*, 270 App Div 2, 5.) Parenthetically, we note that it has not cross-appealed from the judgment.

public policy question, the court found that the lessor knew or should have known that the car probably would be used by some other person thereby charging it with constructive consent under section 388 of the Vehicle and Traffic Law.

Even if this record were to support a finding that Employers knew that Chinetti had rented the Ferrari, such knowledge would not affect the exclusion. *Motor Vehicle Acc. Ind. Corp. (supra)* is thus distinguished because there the lessor's knowledge removed the restriction on use which was the basis of the insurer's disclaimer. More significantly, *Motor Vehicle Acc. Ind. Corp.* did not involve a contract, the validity of which is determined by the law of a sister State.

Equally unavailing because the insurance contract was not written in another State whose law controls are *Rosado v Eveready Ins. Co.* (34 NY2d 43), upon which Special Term also relied, as well as *Jamison v Walker* (48 AD2d 320), and *Allstate Ins. Co. v Dailey* (47 AD2d 375), upon which American relies.

More to the point is *Travelers Ind. Co. v Ryder Truck Rental* (47 NY2d 139), in which the Court of Appeals upheld a rental agreement's exclusion of a lessee's liability for injuries to his guests, even though the rental occurred in New York where guest coverage is required (Vehicle and Traffic Law, § 311; 11 NYCRR 60.1). The accident had occurred in Maine and the vehicle had been registered and principally garaged in Massachusetts. Finding the vehicle's presence in New York to be only temporary, the court held that this State's guest coverage requirement was inapplicable since in enacting subdivision 2 of section 167 of the Insurance Law "the Legislature declared that only policies issued on vehicles principally garaged or used in this State would be subject to the mandatory insurance provisions." *(Travelers Ind. Co. v Ryder Truck Rental, supra,* at p 142.)

Accordingly, the judgment, Supreme Court, New York County (CARRO, J.), entered May 22, 1980, which, *inter alia,* declared that Employers policy covered the underlying Suarez' negligence action to the full limits of its policy, should be reversed, on the law, with costs and disbursements, and judgment entered declaring that Employers

rental exclusion is valid and enforceable with respect to the Suarez claims against Chinetti.

MURPHY, P. J., LUPIANO, SILVERMAN and YESAWICH, JJ., concur.

Judgment, Supreme Court, New York County, entered on May 22, 1980, reversed, on the law, and judgment entered declaring that Employers rental exclusion is valid and enforceable with respect to the Suarez claims against Chinetti. Appellant shall recover of respondent one bill of $75 costs and disbursements of this appeal.