**TRANSPORT INSURANCE COMPANY,
Trafik Services, Inc., C.W. Transport,
Inc., Plaintiffs,**

v.

**PROTECTIVE INSURANCE
COMPANY, Defendant.**

No. 87 Civ. 3188 (CLB).

United States District Court,
S.D. New York.

June 24, 1988.

Ira Lipsius, Schindel, Cooper, Farman & Sorkin, New York City, Skidmore & Haskins, Akron, Ohio, for plaintiffs.

Donohue, Donohue & Sabo, P.C. by Alvin O. Sabo, Albany, N.Y., for defendant.

## MEMORANDUM AND ORDER

BRIEANT, Chief Judge.

In this diversity action, plaintiffs, two motor carriers and their insurer, seek a declaration that C.W. Transport ("C.W.") and Trafik Services Inc. ("Trafik"), are "insureds" under a policy issued by the defendant, and that the defendant has the primary duty to defend and indemnify the plaintiffs for liability incurred as a result of a motor vehicle accident on November 10, 1984 in this district. Motions for summary judgment were brought by both sides. After a hearing on October 21, 1987, the Court denied the motions with leave to renew upon resolution of the underlying action for damages arising from the accident. That action was settled prior to trial. The motions were then renewed at a hearing on January 20, 1988, and fully submitted on March 16, 1988.

The facts stated below are uncontested. On November 7, 1984, Mr. James Hedrick and C.W. entered into a trip leasing agreement. Mr. Hedrick contracted to provide C.W. with a 1981 Kenworth tractor and driver to deliver freight from Akron, Ohio to Buzzards Bay, Massachusetts and Johnston, Rhode Island. C.W. provided its own trailer. Mr. Allan Wines, an employee of Mr. Hedrick, drove the tractor-trailer from Akron to Johnston, arriving at his final destination on November 8, 1984, two days prior to the accident. Mr. Wines, on behalf of his employer, signed off on the leasing agreement, but C.W.'s placards representing its Interstate Commerce Commission ("I.C.C.") authority remained affixed to the vehicle, and were displayed on the tractor at the time of the accident. As between the parties this latter fact is of no significance, although the accident victims could have relied thereon.

Mr. Wines, as an alternative to returning to the Midwest with an empty trailer, arranged to carry a back load of Hasbro toys from Rhode Island on behalf of another motor carrier, Sherman Leasing Co. ("Sherman"), for delivery in Arkansas. Sherman had previously contracted with Trafik for the same carriage, but Trafik was unable to perform for reasons undisclosed. Trafik, on behalf of Sherman, then turned the cargo over to Mr. Wines. There is no formal written agreement for the delivery of the toys between Mr. Hedrick or Mr. Wines and any of the parties, and no bill of lading had been presented to the Court. Under these facts, the Court concludes that the rig was being operated on behalf of Sherman under circumstances equivalent to a lease.

On his way to Arkansas on November 10, 1984 at approximately 6:00 P.M., Mr. Wines was turning onto U.S. Route 6 in Deer Park, New York, when his tractor-trailer was struck by an automobile driven by Mr. Frank Trotta. Mr. Trotta was killed in the accident, and a passenger, his wife Elizabeth, was seriously injured.

Mrs. Trotta brought a diversity action before this Court individually and as the executrix of Mr. Trotta's estate. *Trotta v. Wines, et al.*, 85 Civ. 4461 (CLB). On the eve of trial, that action was discontinued against C.W., Trafik, Dawn Transportation, for which Sherman was acting as an agent, and Frank Trotta on December 15, 1987, when counsel for all appearing parties consented to the settlement of all of Mrs. Trotta's claims for $180,000. Mrs. Trotta settled the wrongful death action for $60,000, toward which C.W. and Trafik each

contributed $27,500 and Dawn Transportation paid $5000, and settled her personal injury claims for $120,000, toward which C.W. and Trafik each contributed $42,500, the estate of Frank Trotta contributed $25,000 and Dawn Transportation contributed $10,000. As part of the settlement agreement, Mrs. Trotta assigned any claims she had against Mr. Hedrick and Mr. Wines to C.W. and Trafik, to the extent they contributed to the settlement.

At the time of the accident, Protective had issued to Mr. Hedrick a specific liability policy which provided that Protective would pay for damages up to $1,000,000 for which the insured was legally liable because of bodily injury or property damages caused by an occurrence, and resulting from ownership maintenance or use of an insured vehicle, which included the tractor involved in this accident. However, Protective disclaimed any duty to defend or indemnify any defendant in the action brought by Mrs. Trotta. Mr. Hedrick and Mr. Wines never appeared in that action, and a default judgment was entered against them on May 13, 1988.

The plaintiffs in this case are C.W. and Trafik, and their insurer, Transport Insurance Co. ("Transport"). Both Transport policies are occupational comprehensive liability and comprehensive physical damage policies. These policies obligated Transport to pay on behalf of C.W. and Trafik all sums which they became liable for as damages arising out of their occupations as truckmen-common carriers, as a result of bodily injury or death to persons and damages to tangible property of others.

C.W.'s payments to settle the action brought by Mrs. Trotta were made directly by C.W., since the insurance policy issued to it by Transport contains a $100,000 self-retention clause. C.W. also incurred $27,-

470.37 in legal fees in defending the underlying action. Trafik's payments were made by Transport. Transport also incurred $18,755.70 in legal fees in defending Trafik in *Trotta v. Wines*. The plaintiffs are now seeking indemnification and costs from the defendant.

*Truckmen's Endorsement*

■ The Protective policy issued to Mr. Hedrick contains an endorsement entitled "Truckmen—Insurance for Non–Trucking Use Endorsement" ("Truckmen's Endorsement") which provides:

we agree with you that the insurance with respect to the insured vehicle(s) described in the Declarations does not apply:
1. While the insured vehicle is used to carry property in any business.
2. While the insured vehicle is being used in business of any person or organization to whom the vehicle is rented or while en route for such purpose.

Protective claims that since this endorsement is valid in Ohio, where the insurance contract was entered into, *see Hartford Accident & Indemnity Co. v. Allstate Ins. Co.*, 5 Ohio App.2d 287, 215 N.E.2d 416, 420 (1966). Protective is relieved of any duty under the policy to defend or indemnify Mr. Hedrick, Mr. Wines, C.W. or Trafik.

This Court concludes, however, that the Truckmen's Endorsement contained in the Protective policy is against the public policy of New York as embodied in N.Y. Vehicle and Traffic Law Sec. 388 (McKinney's 1986), and thus is unenforceable.[1] While noting that it is not compelled by the rules of precedent to follow the holding of another district judge, the Court sees no reason to disagree with the holding of *Transport Ins. Co. v. Protective Insurance Company*, 647 F.Supp. 1381 (N.D.N.Y.1986), in which Chief Judge Munson found such an

---

**1.** The Statute provides in pertinent part:

1. Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied of such owner ...

4. All ... policies of insurance issued to the owner of any vehicle subject to the provisions of this section shall contain a provision for indemnity or security against the liability and responsibility provided in this section....

endorsement to be unenforceable because it violated New York public policy. *Id.* at 1385. New York State has expressed a strong interest in protecting an innocent party injured in the state, and assuring that he has recourse to a financially responsible party. *See* Sec. 388 N.Y. Vehicle and Traffic Law; *Continental Auto Lease Corp. v. Campbell,* 19 N.Y.2d 350, 280 N.Y.S.2d 123, 227 N.E.2d 28 (1967); *Motor Vehicle Accident Indemnification Corp. v. Continental National American Group Co.,* 35 N.Y.2d 260, 360 N.Y.S.2d 859, 862, 319 N.E.2d 182, 184–85 (1974); *Randazzo v. Cunningham,* 56 A.D.2d 702, 392 N.Y.S. 2d 740 (4th Dept.1977), *aff'd on opinion below,* 43 N.Y.2d 937, 403 N.Y.S.2d 894, 374 N.E.2d 1245 (1978).

This Court further concludes that defendant's reliance on *American Home Assurance Co. v. Employers Mutual of Wausau,* 77 A.D.2d 421, 434 N.Y.S.2d 7, (1st Dept.1980), for the proposition that the Truckmen's Endorsement does not violate the public policy of New York since it is valid in Ohio, the state where the insurance policy was entered into, is misplaced. In that case, involving a motor vehicle accident in New York, the court concluded that a rental exclusion in the defendant's Connecticut-issued automobile liability insurance policy that was valid under Connecticut law did not contravene New York public policy. The Court emphasized, however, that other insurance policies affording primary and excessive coverage were in effect at the time of the accident, and thus "[i]ncantations of public policy which conjure up the image of a hapless accident victim bereft of adequate insurance protection cannot obscure the true nature of the controversy. It is no more than a dispute between a primary insurer and the excess carrier." 77 A.D.2d at 430, 434 N.Y.S.2d 7.

Such is not the case before this Court. This is not merely a dispute between two insurance companies over who is the primary insurer of C.W. and Trafik. Were we to conclude that the Truckmen's Endorsement was valid in New York, then Mr. Hedrick and Mr. Wines would be left without any insurance coverage and there would be no recourse but to sue them for their assets. Mrs. Trotta, or her assignees, would be left without adequate coverage and actually denied the protection of Sec. 388 N.Y. Vehicle and Traffic Law.

Furthermore, the policy issued to Mr. Hedrick by Protective anticipated that the insured could become subject to the financial responsibility laws of other states. The policy specifically provides in relevant part:

"If an insured becomes subject to the financial responsibility law or the compulsory insurance law or similar laws or another state, because of the ownership, maintenance or use of your insured vehicle in the state we will interpret this policy to provide any broader coverage required by those laws ..."

This provision indicates that the parties contemplated that New York's public policy of providing recourse to victims of accidents in the State as embodied in Sec. 388 applied to them in the circumstances of this case.

*Omnibus Insurance Clause*

Since the Truckmen's Endorsement in Protective's policy violates New York public policy, it is void and the policy will be read as if it did not contain the offensive provision. *Transport,* 647 F.Supp. at 1385. This Court now considers whether C.W. and Trafik are also "insureds" under the Protective policy, and thus have enforceable contract rights against the defendant.

An "insured" is defined under the Protective policy as:

(1)(a) You.

(b) Any person or organization using an insured vehicle with your permission except: [list of exceptions that are inapplicable here].

(c) Any other person or organization, but only with respect to liability because of acts or omissions of you or an insured under (b) above. We do not cover:

(i) the owner or lender of a vehicle borrowed or leased by you unless that vehicle is a trailer;

(ii) any trucker or his or her agents or employees other than you; or

(iii) any lessee, borrower or renter of an insured vehicle.

The Court determines that C.W. and Trafik are not "insureds" under the Protective policy. Neither plaintiff is covered within Section 1(c), since both are common carriers, and therefore fall within the exclusion for "trucker" in Section 1(c)(ii). "Trucker" is defined in the policy as "[A]ny person or organization engaged in the business or transporting property by vehicle for hire."

■ The Court further concludes that C.W. and Trafik do not fall within the definition of "insureds" contained in Section 1(b). Neither carrier could be found to be "using" the insured vehicle at the time of the accident. The word "use" means to bring into action or service, or to employ for a given purpose. *Webster's Deluxe Unabridged Dictionary* 2012 (2d Ed.1979). It requires the exercise of control or authority over the insured vehicle by C.W. or Trafik, which was not present at the time of the accident. *See Ed Kraemer & Sons, Inc. v. Transit Casualty Company,* 402 N.W.2d 216 (Ct.App.Minn.1987); *Protective Insurance Co. v. Coca–Cola Bottling Co.,* 467 N.E.2d 786 (Ct.App.Ind.1984). The leasing agreement between C.W. and Mr. Hedrick terminated two days prior to the accident. The only basis for liability for C.W. is the presence of its I.C.C. placards or ownership of the trailer. In neither circumstance, does C.W.'s liability arise due to "use" of the insured vehicle.

■ Furthermore, Trafik cannot be found to be "using" the insured vehicle within the meaning of the policy. Trafik merely delivered the load of toys to Mr. Wines on behalf of Sherman. Trafik exerted no control or authority over the insured vehicle.

*Right to Indemnification*

■ There is no dispute that Mr. Hedrick and Mr. Wines are "insureds" within the meaning of the Protective policy, as read without the invalid Truckmen's Endorsement. Protective, therefore, had a duty to defend and indemnify Mr. Hedrick and Mr. Wines for liabilities arising from the motor vehicle accident.

The Court concludes that Mr. Hedrick and Mr. Wines, and therefore the defendant as their insurer, are liable to indemnify C.W. and Trafik for their payments to settle the underlying action and attorney's fees incurred in defending that suit. The motor vehicle accident was caused at least in part by the negligent operation of Mr. Wines, with any contributory negligence of Mr. Trotta being a possible concurrent cause. C.W.'s and Trafik's liability to Mrs. Trotta in her wrongful death and personal injuries action arises from the conduct of Mr. Wines as primary tortfeasor.

C.W. and Trafik did not pay as mere volunteers. They faced real risks due to the negligence of Mr. Wines, and made a reasonable choice in settling the litigation on the eve of trial. After Mr. Hedrick and Mr. Wines refused to appear in that action, and Protective shirked its duty to defend and indemnify them, the plaintiffs were left alone to face the threat posed by that litigation. Civil juries, perceiving that everybody is likely to be insured, often act as almoners for elderly widows who suffer serious personal injuries and the loss of a husband in a tragic accident. They feel no regret in awarding large damages against big trucking companies, as a result a tort lawsuit is now a lottery ticket. The result of which is a question of luck, unlikely to be affected by such niceties as the fact that neither C.W. nor Trafik were operating or controlling the vehicle at the time of the accident.

■ Protective asserts that it is under no obligation to indemnify the plaintiff based upon an exclusion within its policy, which reads:

We do not cover: ... (6) Any claim, liability or obligation asserted against you for indemnification by any trucker arising out of your actions as an agent, servant or employee of that trucker.

As was previously noted by the Court in its discussion of the definition of "insured", at the time of the accident Mr. Wines was not acting as an agent, servant or employee of

either C.W. or Trafik. He was only the agent of Hedrick. The exclusion, therefore, is inapplicable. The duty to indemnify is based upon Mr. Wines' role as the primary tortfeasor.

Based upon the foregoing analysis of uncontested facts, the Court declares the Truckmen's Endorsement contained in the Protective insurance policy issued to Mr. Hedrick invalid, and awards summary judgment to the plaintiffs. Plaintiffs C.W. and Transport shall each recover from the defendant $70,000.00, the costs of settlement of *Trotta v. Wines.* Additionally, C.W. shall recover $24,470.37, and Transport shall recover $18,755.70, the amount of reasonable attorney's fees incurred in defending the underlying action. To this award is added the statutory rate of interest of nine (9) percent per annum from December 15, 1987, the date the *Trotta* action was discontinued.

The Clerk shall enter final judgment.

SO ORDERED.