**R.E. TURNER, INC., Plaintiff,**

v.

**The CONNECTICUT INDEMNITY COMPANY, Defendant.**

**No. 94–CV–123E(F).**

United States District Court,
W.D. New York.

March 31, 1996.

Damon & Morey (Michael J. Willett, of counsel), Buffalo, New York, for Plaintiff.

Lippes, Silverstein, Mathias & Wexler (Sharon M. Porcellio, of counsel), Buffalo, New York, Schindel, Cooper & Farman (Edward Farman, of counsel), New York City, for Defendant.

## DECISION and ORDER

FOSCHIO, United States Magistrate Judge.

### JURISDICTION

The parties to this action filed a consent to proceed before the undersigned on April 14, 1995. The matter is presently before the court on Defendant's motion for summary judgment, dated June 23, 1995, and Plaintiff's cross-motion for summary judgment, dated July 12, 1995.

### BACKGROUND

Plaintiff, R.E. Turner, Inc., filed this action in New York State Supreme Court, Chautauqua County, on January 27, 1994, seeking a declaratory judgment against Defendant stating that any damages or losses suffered by Plaintiff as the result of a vehicular accident were covered by the terms of the policy issued by Defendant to Plaintiff. On February 22, 1994, Defendant removed the action to federal court based on diversity. Plaintiff is a New York corporation; Defendant is a Connecticut insurance corporation authorized to conduct business and doing business in New York.

On March 1, 1994, Defendant filed its answer, along with a counterclaim seeking a declaratory judgment that it was not liable to Plaintiff under the terms of the insurance policy at issue in the action, or that, alternatively, it was only liable for property damage in the amount of $5000. Plaintiff filed an answer to the counterclaim on March 18, 1994, and an amended answer on March 22, 1994.

On June 23, 1995, Defendant filed a motion for summary judgment on the ground that, as a matter of law, its policy with Plaintiff provided no coverage for Plaintiff's liability, or, alternatively, that it was only liable to Plaintiff in the amount of $5000. Thereafter, on July 12, 1995, Plaintiff filed a cross-motion for summary judgment seeking a judgment declaring that the policy of insurance issued by Defendant to Plaintiff provided coverage for all damages and losses arising from the vehicular accident at issue in this case. Oral argument was held December 6, 1995.

For the reasons as set forth below, Defendant's motion for summary judgment is DENIED. Plaintiff's cross-motion for summary judgment is GRANTED.

### FACTS

Plaintiff, R.E. Turner, Inc., ("Turner"), is the successor-in-interest of Turner Buffalo, Inc.[1] Both entities are incorporated in New York. At the time of the incident at issue in this case, Turner, d/b/a Ellicott Trucking, owned a 1980 International Harvestor tractor, serial no. 14720. By an agreement dated September 22, 1992, Turner leased this 1980 tractor to West Contract Services a/k/a EE Operating Corporation ("West"). West is a common carrier authorized by the Interstate Commerce Commission ("ICC").

Pursuant to the terms of the lease, West assumed "exclusive possession, control and use" of the tractor for a period of two years, the term of the lease. As required by the lease and federal regulations, a placard bearing West's name and ICC docket number was affixed to the sides of the tractor. The lease also authorized the subleasing and tripleasing of the tractor under certain conditions, and provided that such subleases could be authorized by either Turner or West. Subleasing the tractor avoids return of the vehicle to the terminal without a load ("deadheading").

The lease also required that certain levels of insurance for the tractor be obtained. Specifically, Paragraph 20 of the lease required West to obtain insurance coverage at levels required by the Code of Federal Regulations, and required Turner to maintain "bobtail" insurance, *i.e.* insurance that would cover any "miles operated" by Turner during the terms of the lease when the tractor was not in actual service for West. Defendants' Notice of Motion filed June 23, 1995, ("Defendant's Motion"), Exh. D at ¶ 20.

As required, Turner obtained the necessary insurance. In order to obtain "bobtail" insurance, Turner entered into an agreement with Defendant, the Connecticut Indemnity Company, and obtained a policy, effective May 11, 1992, which had a liability limit of $500,000, and which provided for coverage for property damage, bodily injury, and damages "arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of pollutants." The policy also contained an endorsement entitled "Truckers—Insurance for Non–Trucking Use." This endorsement contained an exclusion which provided as follows:

This insurance does not apply to:

a. A covered "auto" while used to carry property in any business.

b. A covered "auto" while used in the business of anyone to whom the "auto" is rented.

Defendants' Motion, Exh. B Truckers—Insurance for Non–Trucking Use Endorsement.

The policy also included an endorsement, described as "Endorsement # 2," which provided as follows:

"We agree with YOU that if any of the provisions of the endorsement, "Truckers—Insurance for Non–Trucking Use" CA 2309 (01/87) are held to be void or

---

1. The fact statement is taken from the documents filed in conjunction with the instant motions for summary judgment, along with the complaint filed in this action.

unenforceable under the law of any jurisdiction, for reasons of public policy, violation of statute, or otherwise, WE will not pay any sums in excess of the minimum amounts required by the Financial Responsibility Laws of such jurisdiction, and then only after all other valid and collectible insurance available to the Named Insured, or which would be available to the Named Insured in the absence of this policy, has been exhausted."

Connecticut Indemnity Company Insurance Policy, Endorsement # 2, dated June 30, 1992.

Endorsement # 4 of the policy contained a number of "additional definitions," defining "covered auto" to include only those autos which, at the time of the loss, were subject to a valid, long-term lease, existing with a designated certified carrier covering that vehicle, of not less than 30 consecutive days. Further, the long-term lease agreement was required to show exclusive possession, control and use of the described equipment by the carrier, and required the carrier to provide bodily injury and property damage liability insurance. Defendants' Motion, Exh. B. There is no dispute that such a long-term lease between Turner and West existed or that West had secured the required insurance coverage.

The policy issued by Defendant, No. BA 453676, specifically identified the 1980 tractor as the covered vehicle. The policy also provided that:

> No coverage is afforded when the described vehicle is:
>
> 1. Under carrier direction, control or dispatch.
>
> 2. Used to carry property in any business or in route for such purpose.
>
> 3. While being operated or used in any racing or speed contest.
>
> 4. Leased without an operator.
>
> 5. When permanent lease with certificate holder has terminated.

Defendant's Notice of Motion, Exhibit C.

On December 6, 1992, while the tractor was leased to West, and while the insurance policy with Defendant was in effect, a driver employed by Turner, Gary Miller, was dispatched to Dunkirk, New York, to pick up a trailer which was to be transported by Hi-Line Service, Inc. ("Hi-Line"), a company wholly owned by Turner. Hi-Line was also a common carrier authorized by the ICC, and carried the appropriate liability insurance through Progressive Insurance Company ("Progressive"). As the vehicle which Miller usually drove was under repair, Miller took the 1980 tractor leased to West, although Turner had certain vehicles which had Hi-Line placards affixed to them. West was not notified of the trip, nor did they give authorization for the trip. On the way to Dunkirk, Miller lost control of the tractor, which went over a guardrail and off the road. Miller never picked up the trailer or the load of juice which was to be transported from Dunkirk to Bristol, Pennsylvania.

Upon learning of the accident, Turner retained Dick Ostrom Towing Service ("Ostrom") to tow the tractor out of the ditch and back to the Turner terminal, a distance of approximately twenty miles. Richard E. Turner, Sr., the owner of Turner, traveled to the accident site and noted that it appeared that the vehicle had sustained little damage. A police officer at the scene of the accident remarked that it was amazing that there was no fuel leak. The tractor's engine was started prior to being hooked onto the tow in order to alleviate the brakes of any pressure. However, once back at the Turner terminal, it was found that there was a hole in the fuel tank, and that no diesel fuel remained in the tank.

Approximately one day later, a representative from the Environmental Protection Agency ("EPA") contacted Mr. Turner at his home, and informed him that there had been a fuel spill. Mr. Turner contacted Duff Environmental and asked them to investigate the fuel spill, and to clean it up in compliance with federal regulations. The work was done, and Turner was billed in an amount of approximately $65,000. Turner was also billed by Union Concrete for damage to the guardrail. The Union Concrete bill was paid by Turner, however, the Duff Environmental invoices were submitted to Defendant for payment under the insurance policy herein described.

Prior to the commencement of this action, no claim for payment was ever presented to the insurance companies for West and Hi–Line. However, at oral argument, the court was informed that Turner had requested reimbursement of its payment for the cleanup services from Progressive, Hi–Line's carrier, but had received only a reservation of rights letter in response. Turner also made a belated request for payment from West's insurance carrier, T.H.E. Insurance Company ("T.H.E."), which has been ignored. Mr. Turner attempted to speak to the owner of Ostrom Towing Service regarding the damage, but was unable to reach any resolution.

At the time of the accident, the 1980 tractor was insured by T.H.E. with a liability limit of $1 million. The T.H.E. policy contained the form MCS–90 endorsement, as mandated by the ICC and the United States Department of Transportation, 49 C.F.R. § 387.15, which provides that despite any exclusion, condition or limitation contained in the insurance policy, the insurer which issued the MCS–90 agrees to pay any final judgment against the insured for public liability, *i.e.* bodily injury, property damage, and environmental restoration, arising out of the use of any commercial vehicle. Defendant's Motion, filed June 23, 1995, Exhibit H. Hi–Line also had similar insurance in effect, through the Progressive Casualty Insurance Company, ("Progressive"), with a liability limit of $750,000, which also contained the MCS–90 endorsement. There is no dispute that the Defendant's, T.H.E.'s, and the Progressive's policies would apply to Turner's expenses for cleanup costs, if the claim was otherwise covered under any of the policies. Defendant's policy with Turner also provides that, as to the tractor involved in this claim, it provides "primary insurance." Defendant's Motion, Exhibit B at ¶ 5(a), (d).

### DISCUSSION

Summary judgment will be granted pursuant to Fed.R.Civ.P. 56 when the moving party demonstrates that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir.1991). The party moving for summary judgment bears the burden of establishing the nonexistence of a genuine issue of material fact. If there is any evidence in the record based upon any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party cannot obtain a summary judgment. *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985).

The function of a district court in considering a summary judgment motion is not to resolve disputed issues of fact, but to determine whether there is a genuine issue to be tried. *Rattner, supra*, at 209. In assessing the record, including any affidavits, exhibits, and other submissions, the court is required to resolve all ambiguities and to draw all factual inferences in favor of the nonmoving party. *Anderson, supra*, at 255, 106 S.Ct. at 2513–14; *Rattner, supra*, at 209.

In a diversity action such as the instant action, because New York is the forum state, New York's choice-of-law rules will determine which state's substantive law should apply. *Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Machleder v. Diaz*, 801 F.2d 46 (2d Cir.1986). The question is, therefore, not what law the federal court would apply, "but what law the New York courts would apply." *O'Connor v. Lee–Hy Paving Corp.*, 579 F.2d 194, 205 (2d Cir.1978), cert. denied, 439 U.S. 1034, 99 S.Ct. 638, 58 L.Ed.2d 696 (1978). Under New York's choice-of-law rule, the law of the jurisdiction having the most significant contacts and the greatest interest in the litigation will be applied. *See Index Fund, Inc. v. Insurance Company of North America*, 580 F.2d 1158 (2d Cir.1978); *Cooney v. Osgood Machinery, Inc.*, 81 N.Y.2d 66, 595 N.Y.S.2d 919, 612 N.E.2d 277 (1993); *Schultz v. Boy Scouts of America*, 65 N.Y.2d 189, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985); *Neumeier v. Kuehner*, 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972). In this case, as all parties have cited to New York law, the court concludes that all parties agree that

New York law should apply to this action. Further, as the owner of the tractor is a New York corporation and Defendant is authorized to conduct its business of issuing commercial liability insurance in New York the accident having occurred in New York, New York law will be applied to the question presented. *Transport Insurance Co. v. Protective Insurance Co.*, 696 F.Supp. 870 (S.D.N.Y.1988). Moreover, even if the insurance policy were issued elsewhere, New York law may be applied.

### 1. *Liability Under Defendant's Policy*

Defendant asserts that its non-trucking use policy, known as the "bobtail" policy, which was in effect on the tractor at the time of the December 6, 1992 accident, only provided limited automobile liability insurance coverage to Plaintiff. Specifically, Defendant states that such a policy is designed to provide insurance to owners of tractors who lease their vehicles with drivers on a long-term basis to common carriers who have liability insurance for the protection of the public, and that, in accordance with the lease, those policies are expected to cover all business use of the vehicle. In contrast, the "bobtail" policy is designed to cover the vehicle when it is being used in the personal activities of the driver. As Miller, the employee of Turner, was driving the vehicle to Dunkirk to pick up a load of product for transport, Defendant contends that the tractor was being used in business, and that, therefore, its "bobtail" policy does not cover the damages which resulted from the accident. Rather, Defendant argues that Hi-Line, as the common carrier which was to transport the juice to Pennsylvania, had leased the tractor as a matter of law, and that, as such, Hi-Line's insurance policy should be primary. Defendant also argues that, additionally, West's liability policy, *i.e.* the "T.H.E." policy, should cover the damages incurred as a result of the accident because, as the lessee of the tractor, West was entitled to compensation for the sublease of the tractor to Hi-Line, and therefore, the tractor was also traveling in the furtherance of business for West. Defendant further contends that under the MCS–90 endorsement required by ICC, there will be no gap in coverage for the losses caused by the accident, as the "T.H.E." policy necessarily insures against losses based on environmental cleanup costs such as those sought by Turner. Defendant's Memorandum of Law, dated June 23, 1995, at p. 16.

Turner maintains that the "bobtail" policy issued by Defendant was in effect whenever the vehicle was not in the custody of the lessee, namely West, and that, therefore, Defendant's insurance policy covers the damages for the accident. Specifically, Turner states that the lease between West and itself defined "bobtail" insurance to be "that which will apply to miles operated by Contractor during the terms of this lease but not in actual service for Carrier." Plaintiff's Memorandum of Law in Support of its Cross–Motion for Summary Judgment, at p. 12. Accordingly, as, at the time of the accident, the tractor was not carrying a load, and was not being used in the business of West, Turner argues that the "bobtail" policy should apply. Turner also asserts that the tractor was not being used in the business of Hi-Line as Hi–Line never paid West or Turner for the use of the 1980 tractor, and that the tractor was never used to transport any load for Hi–Line. If, therefore, the tractor was at the time of the accident being used in Hi–Line's business, upon payment of Turner's claim, Defendant may be entitled to make a claim against Hi–Line and the Progressive policy as Turner's subrogee. Defendant's Motion, Exhibit B, Section IV ¶ 5. As neither Hi–Line nor Progressive are parties to the present action, the court is unable to make a definitive finding as to any obligations Progressive may have under its insurance policy with Hi–Line.

As to West, the court agrees with Turner's argument that, at the time of the accident, the tractor was not operating in the business of West. In *Wenkosky v. Protective Insurance Co.*, 698 F.Supp. 1227 (M.D.Pa. 1988), the plaintiff was the lessor of a truck tractor semi-trailer combination rig under a lease with Daily Express, Inc. a common carrier authorized by the ICC. The defendant was an insurance company from whom the plaintiff purchased a "bobtail" policy. Daily Express, Inc. maintained insurance

coverage on the tractor which it leased from the plaintiff to cover the tractor while it was being operating in accordance with the lease between the plaintiff and Daily Express, Inc. After carrying a load of goods for Daily Express, the plaintiff drove his tractor/trailer to another location where his rig was loaded with logs to be transported for a third-party not associated with Daily Express. During his trip with the logs, the plaintiff was in an accident in New York state. After an action was filed in the New York supreme court, Daily Express, Inc., which was a named defendant, was dismissed from the action on a summary judgment motion after the court concluded that the plaintiff was an independent contractor at the time of the accident and that, "even if he were an employee [of Daily Express], the private haul for [the third party] was without authorization from or knowledge of Daily Express and thus outside plaintiff's scope of employment." *Wenkosky, supra,* at 1229 n. 1. The plaintiff then brought action against the "bobtail" insurer in Pennsylvania.

In this case, it is not disputed that West did not authorize, nor did West have any knowledge of the fact that the 1980 tractor covered under the West lease which Miller took from Turner's terminal was dispatched for the purpose of being used to transport goods for a third party, *i.e.,* Hi–Line. Further, even though, under its agreement with Turner, West was entitled to compensation for any subleases entered into during the term of the lease, Paragraph 10(b)(V) of the West/Turner lease expressly stated that failure by Turner to obtain the authorization or consent of West to any sublease would "be considered outside of the scope of the agency relationship" between Turner and West. Defendant's Motion, Exhibit D, pp. 4–5. The court accordingly finds that, at the time of the December 6, 1992 accident, the tractor was not operating in the furtherance of West's business or with West's consent, and, therefore, West's insurance coverage would not apply.

■ As to whether the tractor was in route to "carry property" for Hi–Line, however, the court's conclusion must be different. It is not disputed that Miller took the tractor from the Turner terminal in order to pick up a load of juice for Hi–Line to transport from Dunkirk to Pennsylvania. It is also not disputed that, at the time of the accident, Miller had not yet reached Dunkirk, and, as such, was not carrying any load. However, that fact alone cannot permit a finding that the tractor was not in the business of carrying property. In *Zamalloa v. Hart,* 31 F.3d 911 (9th Cir.1994), the defendant, the lessor and driver of a tractor-trailer, had entered into a long-term lease with a common carrier, Ken–Ray Trucking Corp. During the period of the lease, the defendant, after making a delivery for Ken–Ray, offered his truck to a third-party, Ligon Nationwide Inc., for a trip-lease.[2] En route to pick up the load for Ligon, and prior to signing for the load and picking up Ligon's placard for the truck, the defendant was involved in an accident involving the plaintiff. Reversing the holding of the district court that there could be no contribution from Ligon as Ken–Ray was the sole lessee, the Ninth Circuit held that, based on the facts presented, a jury could well have found that the defendant and Ligon had made an oral lease, and that the lease was in effect at the time of the accident, making both Ligon and Ken–Ray liable for the acts of the defendant as its statutory employee. The case was then remanded for a jury determination on the disputed fact of whether an oral lease had been made.

■ In this case, the facts are not disputed. It is clear that Miller picked up the tractor at the Turner terminal to drive it to Hi–Line in order to pick up a load of juice to transport on Hi–Line's behalf to Pennsylvania. The court finds that, as such, the tractor was operating in Hi–Line's business. *See, e.g., Wenkosky, supra,* at 1232 (while hauling a load for a third-party, tractor was being used in the business of the third-party). Turner concedes that "it is possible" for a vehicle to be used in the business of a party even if it is not carrying a load at the time. Plaintiff's Memorandum of Law, at p. 11. The facts of this case show that, by taking a

---

**2.** Trip-leases are contracts to haul for companies other than the lessee. *National Labor Relations*

*Board v. A. Duie Pyle, Inc.,* 606 F.2d 379, 383 (3d Cir.1979).

tractor under the West lease, Miller simply took the wrong tractor to Dunkirk for his trip. Defendant's Motion, Exhibit E; Deposition of Richard E. Turner, Sr. This mistake, however, does not negate the fact that the tractor was, at the time of the accident, being used in Hi–Line's business. As such, under the terms of the Defendant's insurance policy issued to Turner, as the tractor was being "used to carry property in any business," Defendant's Notice of Motion, Exhibit B, Non–Trucking Use Endorsement to Defendant's Insurance Policy, Defendant would not be obligated to cover the damages incurred as a result of the December 6, 1992 accident. Nonetheless, as this result comes about because of the policy's "bobtail" exclusion, the court must also determine whether the exclusion is valid under New York law before a finding may be made as to Defendant's liability under the policy.

### 2. *Validity of the Bobtail Exclusion*

As noted, the "bobtail" policy at issue in this case contains a non-trucking use endorsement that limits coverage as follows:

This insurance does not apply to:

a. A covered "auto" while used to carry property in any business.

b. A covered "auto" while used in the business of anyone to whom the "auto" is rented.

█ Turner contends that this exclusion is invalid under New York and, therefore, unenforceable as to Turner in this case. Defendant, however, argues that the an exclusion is valid in New York under certain circumstances, and other the facts in this case, as other insurance coverage is available to

Plaintiff. New York law applies to this question.

Section 388 of the New York State Vehicle and Traffic Law provides that one injured by the negligent operation of a motor vehicle should have recourse to a financially responsible defendant.[3] New York Vehicle & Traffic Law § 388 (McKinney 1986). This law has resulted in the finding that "bobtail" exclusions, such as the one at issue in this case, are invalid as against New York public policy as the operation of the exclusion would leave an injured party without recourse. *See e.g., Transport Insurance Co. v. Protective Insurance Co.,* 696 F.Supp. 870, 872–73 (S.D.N.Y.), *aff'd,* 868 F.2d 1267 (2d Cir.1988) (finding that bobtail exclusion violated New York Vehicle and Traffic Law § 388 and that the exclusion was therefore against public policy); *Transport Insurance Co. v. Protective Insurance Co.,* 647 F.Supp. 1381 (N.D.N.Y.1986) (same holding); *Planet Insurance Co. v. Gunther et al.,* 160 Misc.2d 67, 608 N.Y.S.2d 763, 769 (Sup.Ct.Rockland Cty. 1993) (same holding); *Randazzo v. Cunningham,* 56 A.D.2d 702, 392 N.Y.S.2d 740 (4th Dep't.1977) (same holding). The New York Court of Appeals has not to date directly addressed the issue.

Defendant argues that the exclusion is valid in this case as other insurance is available, namely insurance from either West or Hi–Line. As the court has previously determined that West's insurance policy would not cover the action as the tractor was not being used, as defined by the lease between Turner and West, in West's business, the court must interpret Defendant's argument using the possible liability, and thus available insurance coverage, of Hi–Line. Reviewing the facts of

---

**3.** New York Vehicle & Traffic Law § 388 provides in part:

(1) Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner. Whenever any vehicles as hereinafter defined shall be used in combination with one another, by attachment or tow, the person using or operating any one vehicle shall, for the purposes of this section, be deemed to be using or operating each vehicle in the combination, and

the owners thereof shall be jointly and severally liable hereunder ...

(4) All bonds executed by or policies of insurance issued to the owner of any vehicle subject to the provisions of this section shall contain a provision for indemnity or security against the liability and responsibility provided in this section; but this provision shall not be construed as requiring that such a policy include insurance against any liability of the insured, being a individual, for death of or injuries to his or her spouse or for injury to property of his or her spouse, where the injured spouse, to be entitled to recover, must prove the culpable conduct of the insured spouse.

this case, the court cannot find that the existence of a policy covering Hi–Line changes the validity of the exclusion in this case.

In *Connecticut Indemnity Company v. Varela*, 1995 WL 16800 (S.D.N.Y.1995), relied upon by Defendant, the court upheld the validity of the identical bobtail exclusion at issue in this case on the ground that other insurance coverage was available to cover the defendant and, therefore, no public policy issue was affected. However, the facts of that case are distinguishable from the instant case. In *Varela*, the defendant, Varela, was the owner of a 1981 tractor that was under long-term lease to a common carrier, Black Bullet Transportation, Inc. Black Bullet, pursuant to the terms of its lease, purchased an insurance policy, while Varela purchased a "bobtail" policy from Connecticut Indemnity. While the lease was in effect, Varela, driving without a load, but at the direction of Black Bullet, was involved in an accident. The parties agreed that the tractor was being used in the business of Black Bullet. Claims were filed with both Connecticut Indemnity and Aetna, Black Bullet's primary insurance policy. In the resultant lawsuit to determine which insurance carrier had the duty to indemnify, Connecticut Indemnity filed a summary judgment motion claiming that it was not liable under the "bobtail" policy exclusion. The court agreed, finding that the exclusion was not against public policy as other insurance, namely Black Bullet's policy with Aetna, was available. The court stated that if "the exclusion or overall policy provides for other insurance," the exclusion is valid and is not against public policy. *Varela, supra*, at 3. Significantly, as the tractor was operated by Varela, as owner-lessor, for Black Bullet's benefit, there was no question that the Aetna policy would provide primary coverage. Moreover, given that Black Bullet had directed Varela's operations of the tractor at the time of the accident, Aetna had no basis upon which to interpose a sustainable disclaimer. Finding that, upon the record in that case, there were two insurance policies available to provide coverage, the issue was

one of which was primary or excess, there was no need to resort to public policy considerations to resolve the issue of coverage. *Varela, supra*, at 3.

In this case, Endorsement No. 14 of the "bobtail" policy states that the policy is not applicable "with respect to an owned automobile while such automobile is in the custody of a lessee under a written lease agreement which requires the lessee to provide insurance thereon unless insurance is specifically provided by endorsement to this policy." However, it has been determined that the tractor was not being driven in the business of West. There is no further language in the Defendant's policy to ensure that, if the vehicle is being used in another manner, other than by the lessee, there is appropriate insurance coverage to cover an injured party or property damage within the meaning of Section 388 of the Vehicle and Traffic Law. *See Morris v. Snappy Car Rental, Inc.*, 189 A.D.2d 115, 595 N.Y.S.2d 577, 582 (4th Dep't. 1993), *aff'd*, 84 N.Y.2d 21, 614 N.Y.S.2d 362, 637 N.E.2d 253 (1994). As such, the court finds that this case "is not merely a dispute between two insurance carriers," *Transport Insurance Co.*, 696 F.Supp. at 873, but rather, a dispute between an injured party and, the lessor-owner of the tractor and its insurance carrier. The fact that Hi–Line does have an insurance policy does not change the result, as there is no evidence presented that the Hi–Line policy would cover this accident and damage claim, despite the conclusory argument of Defendant. Indeed, the claim has only recently been presented to Hi–Line's insurer without any indication that coverage would be acknowledged.[4] Upholding the exclusion in this case could, therefore, result in a situation where a plaintiff with claim against Turner as owner of the tractor or Miller, the driver, could be deprived of a financially responsible party from whom a recovery may be sought. *Cf., American Home Assurance Co. v. Hartford Ins. Co.*, 74 A.D.2d 224, 427 N.Y.S.2d 26, 28 (1st Dep't. 1980). This result is against the public policy of New York state and can therefore not be

---

4. The court has not been presented with a copy of Hi–Line's insurance policy and, therefore, cannot determine whether such policy would cover the accident, or whether any claim at this date may possibly be time-barred.

permitted. As such, under the facts of this case, the court finds that the "bobtail" exclusion is invalid. Here, the fact that the exclusion operates to defeat coverage where the leasing or subleasing carrier's insurance cannot or refuses to extend coverage creates a "gap" in coverage for a legal liability accruing to Turner as an owner under New York Vehicle & Traffic Law Section 388, *Transport Ins. Co. v. Protective Ins. Co., supra*, at 873, makes the case analogous to *Randazzo, supra*, and not *Varela*. Further, the fact that in this case the claiming party is the insured, does not alter the result as the claim, but for Turner's decision to arrange for the spill cleanup at its own expense, would have been made by the state as owner of the right-of-way where the spill occurred. If Turner had refused to pay or was financially unable to respond to a judgment, the public would necessarily be exposed to an uninsured loss contrary to Section 388.

This conclusion is entirely consistent with the available caselaw. In *Randazzo, supra*, and *Transport Insurance Co. v. Protective Insurance Co.*, 647 F.Supp. 1381 (N.D.N.Y. 1986), the insurance policy "bob-tail" exclusion failed to require adequate insurance while the vehicle was operated under a long-term lease and was therefore invalidated as failing to provide protection as broad as that required under N.Y. Vehicle & Traffic Law Section 388(1) and (4). The fact that a lessee's policy, which was before the court, and could have provided coverage did not save the offending exclusion in *Randazzo*. In *Transport Insurance Co., supra*, except for the question of the validity of the exclusion, neither carrier had any apparent basis to disclaim coverage.

In *Transport Insurance Co. v. Protective Insurance Co.*, 696 F.Supp. 870 (S.D.N.Y. 1988), *aff'd*, 868 F.2d 1267 (2d Cir.1988), the court invalidated the "bobtail" exclusion in the tractor owner's policy where, despite the existence of other three other carriers and their respective insurance policies as potentially liable parties, the court determined that such parties had no liability. The court further determined that in this circumstance, the case was "not merely a dispute between two insurance companies over who is the primary insurer ...," *Transport Insurance, supra*, at 873, and, accordingly found that to validate the "bobtail" exclusion would render the owner of the tractor involved in the accident and his driver "without any insurance coverage and there would be no recourse but to sue them for their assets" leaving the injured plaintiff "without adequate coverage and actually denied the protection" of Section 388. *Id.*

Defendant relies upon *American Home Assurance Co. v. Employers Mutual of Wausau*, 77 A.D.2d 421, 434 N.Y.S.2d 7 (1st Dep't.1980) which held that Connecticut law applied to an insurance policy issued in Connecticut with a vehicle rental exclusion valid under Connecticut law, and *American Home Assurance Company v. Hartford Insurance Company*, 74 A.D.2d 224, 427 N.Y.S.2d 26 (1st Dep't.1980) which upheld an exclusion of claims arising by operation of a covered vehicle which was leased and which was insured by the lessee, to support Defendant's position that the existence of other insurance obviates any claim that a "bobtail" exclusion on its face or as applied violates New York public policy. Defendant's Memorandum of Law in Support filed June 23, 1995 at 11–17. A careful reading of these cases shows, however, that unlike the present case, in neither of these cases was there any actual or threatened disclaimer of coverage by any insurance carrier which could provide alternative coverage for the claims in litigation. Thus, in *Employers Mutual of Wausau, supra*, the court pointed to the fact that "three other policies *affording liability coverage for this accident were in effect*" in finding the public policy argument inapplicable. *Employers Mutual of Wausau, supra* at 11 (emphasis added). Similarly, in *American Home v. Hartford, supra*, the court also carefully reviewed the terms of each policy of each carrier involved, which were all parties to the declaratory judgment action, and found none had any viable grounds for disclaiming liability. Thus, the court was able to determine that "the situation is not one where upholding the exclusion will deprive a plaintiff or a financially responsible party from whom a recovery can be sought." *Id.*, 427 N.Y.S.2d at 28. It is therefore apparent that, in these cases, the fact of the existence of actual

insurance coverage irrespective of the challenged exclusion, rendered the public policy issue moot.

Neither side in the instant matter has attempted to make West or Hi–Line and their respective carriers, parties to this action. Although the court was informed at oral argument that some belated attempt to seek coverage from Progressive, Hi–Line's carrier, has been made, as of this time there is no information available to the court to suggest that Progressive will not also disclaim, presumably on a basis other than that relied upon by Defendant. For the reasons discussed, there is also no basis to believe that "T.H.E." Insurance would honor any claim on behalf of West. Defendant's confidence that Progressive and "T.H.E." Insurance would, under the MCS–90 endorsement "be obligated to make this payment if the claim were presented to them," Defendant's Memorandum of Law in Support filed June 23, 1995 at 16, can be easily confirmed. Defendant could have paid Turner's claim and, by subrogation, sought recovery from either or both carriers. As the court in *Planet Insurance Company v. Gunther, supra*, aptly stated: "The problem, of course, is when the insurers all disclaim or deny any coverage." *Gunther, supra*, 608 N.Y.S.2d at 767.

The fact that it is Turner which seeks to invoke the New York public policy is irrelevant to the issue as that policy is intended to protect against uncompensated "injuries to person or property." New York Vehicle & Traffic Law § 388(1). Here, the primary expense related to the case, a $65,000 environmental cleanup bill, remains unpaid. It is Defendant's insistence upon enforcement of its "bobtail" exclusion, and the indisputable absence of any other insurance coverage, that creates the gap in the required protection forbidden by Section 388(4). The statute places the ultimate insuring responsibility upon the owner of a vehicle and the carrier which issued the coverage allowing the insured owner's vehicle to be operated on New York's roads when not covered by other insurance. It was Defendant's burden to establish that other insurance is in fact available to respond to any claims within the statutes provisions. Defendant has failed to meet this obligation. The exclusion is therefore void as against fundamental New York public policy and unenforceable as to Turner.

### 3. *Alternative Limitation on Damages*

■ Alternatively, Defendant argues that, if the "bobtail" exclusion is invalid, its exposure should be limited to the minimum amount required by the financial responsibility laws of New York state, in this case $5000, pursuant to Endorsement No. 2.

In *Planet Insurance Co. v. Gunther, supra*, a case similar to the instant case, the court found that the endorsement should not act to reduce the amount of coverage. In that case, the court stated that:

> ... the language of endorsement no. 2 is not given effect where an exclusion is voided on public policy grounds because the policy of insurance must be deemed to provide the coverage it otherwise specifies as if the endorsement did not exist, so as to provide full coverage to the insured and afford innocent persons adequate financial recourse.

*Planet Insurance Co., supra*, at 768.

Indeed, the New York Court of Appeals has stated that "if an attempted exclusion is not permitted by law, the insurer's liability under the policy can not be limited." *Matter of Liberty Mutual Insurance Co. (Hogan)*, 82 N.Y.2d 57, 603 N.Y.S.2d 409, at 411, 623 N.E.2d 536, at 538 (1993). Defendant cites *Morris v. Snappy Car Rental, Inc.*, 84 N.Y.2d 21, 614 N.Y.S.2d 362, 637 N.E.2d 253 (1994), for the proposition that the requirements of Vehicle and Traffic Law § 388 are not mandatory in amounts in excess of the state's financial security limits. However, in *Morris*, the court found that a rental car company could not contract away its responsibility to maintain coverages mandated under the state's Vehicle and Traffic Law, but that it could provide only the minimum statutory amounts required under that law. This is a different scenario than an insurance company attempting to limit its liability under an already negotiated and purchased insurance policy where an exclusion is found to be invalid as against public policy. Permitting Defendant to limit its liability even in cases

**150**

where its policy exclusion is found to be invalid would render the finding on the issue of validity essentially meaningless.

The court finds that, as the policy exclusion is invalid, the policy should be interpreted as if the exclusion did not exist. *See, e.g., Transport Insurance Co. v. Protective Insurance Co.*, 696 F.Supp., at 873. Accordingly, Defendant is obligated, under the terms of its insurance policy with Plaintiff, to provide coverage for damages arising out of the accident which is the subject of this action.

### CONCLUSION

Based on the foregoing, Defendant's motion for summary judgment is DENIED; Plaintiff's cross-motion for summary judgment is GRANTED. Defendant's insurance policy with Turner is declared to provide the primary coverage for the damages at issue in this case.

SO ORDERED.